DIETZ, Judge.
 

 *562
 
 This case began as a neighborhood dispute about a fence that Mark and Virginia Shelley built in their backyard. Some of the Shelleys' neighbors believed this fence, which obstructed the view from their own property, was a retaining wall that violated county building code or permitting requirements. The case evolved over time into a complicated lawsuit involving various claims, counterclaims, and crossclaims by the Shelleys, their neighbors, their homeowners' association, and Cabarrus County.
 

 This interlocutory appeal concerns the dismissal of the Shelleys' crossclaims against Cabarrus County. As explained below, we affirm the dismissal of the Shelleys' common law tort claims based on governmental
 
 *563
 
 immunity,
 
 *605
 
 dismiss the Shelleys' appeal from the dismissal of their declaratory judgment claim for lack of appellate jurisdiction, and reverse the dismissal of their procedural due process claim and remand for further proceedings on that claim.
 

 Facts and Procedural History
 

 In 2009, Mark and Virginia Shelley obtained permits from Cabarrus County to build a fence to enclose their backyard pool. As construction on the fence progressed, a dispute arose between the Shelleys and some of their neighbors, who believed the fence was a retaining wall subject to stricter permitting and building code requirements.
 

 After several unsuccessful efforts to get Cabarrus County to condemn the fence for building code violations, Jerry and Brenda Ballard-two of the Shelleys' neighbors-sued the Shelleys and the Asheford Green Property Owners' Association, alleging that the fence violated various neighborhood covenants. The Shelleys filed an answer, asserting defenses and counterclaims.
 

 The Property Owners' Association later filed claims against Cabarrus County, alleging that the Shelleys' fence did not comply with county permitting and building code requirements, and seeking a writ of mandamus and injunction to compel Cabarrus County to enforce the building code. Cabarrus County then filed a crossclaim against the Shelleys seeking an order requiring them to comply with the building code or tear down the fence.
 

 The Shelleys then asserted crossclaims against Cabarrus County including various common law tort claims, a due process claim, and a declaratory judgment claim. The county moved to dismiss the Shelleys' crossclaims on the grounds of governmental immunity and failure to state a claim on which relief can be granted.
 

 After a hearing, the trial court dismissed the Shelleys' tort claims based on governmental immunity, finding that the county had not waived its immunity by its purchase of excess liability insurance. The trial court dismissed the Shelleys' declaratory judgment and constitutional claims for failure to state a claim under Rule 12(b)(6). The Shelleys timely appealed these interlocutory rulings.
 

 Analysis
 

 I. Dismissal of the tort claims
 

 The Shelleys first challenge the dismissal of their tort claims based on governmental immunity.
 

 *564
 
 We begin by addressing our jurisdiction over this issue on appeal. Generally speaking, governmental immunity, as a form of sovereign immunity, is not merely an affirmative defense to claims; it is a "complete immunity from being sued in court."
 
 Magana v. Charlotte-Mecklenburg Bd. of Educ.
 
 ,
 
 183 N.C. App. 146
 
 , 147,
 
 645 S.E.2d 91
 
 , 92 (2007). In other words, this immunity not only prevents courts from entering judgments against our state government, but also protects the government from being haled into court in the first instance.
 

 Id.
 

 As a result, when the State or its subdivisions move to dismiss a tort claim based on immunity and the trial court
 
 denies
 
 the motion, that denial unquestionably affects a substantial right. This is so because, if the governmental agency were forced to litigate the case to judgment before appealing the immunity ruling, it could deprive the government of its right not to have to appear in court and defend the case at all.
 

 The same is not true when the trial court
 
 grants
 
 a motion to dismiss a tort claim based on sovereign or governmental immunity. In that circumstance, the losing party is in the same position as any other litigant whose claim was dismissed for lack of jurisdiction or for failure to state a claim on which relief can be granted. One might assume, therefore, that an appeal from an order
 
 granting
 
 a motion to dismiss based on sovereign or governmental immunity would not automatically affect a substantial right, simply because the ruling involved immunity.
 

 But, as is often the case with our jurisprudence, what one might reasonably assume is not what our case law holds. In a series of cases that we are unable to distinguish from this one, our Court has held that the
 
 grant
 
 of a motion to dismiss based on sovereign or governmental immunity is immediately appealable.
 
 See
 

 Greene v. Barrick
 
 ,
 
 198 N.C. App. 647
 
 , 649-50,
 
 680 S.E.2d 727
 
 , 729-30 (2009) ;
 

 *606
 

 Odom v. Lane
 
 ,
 
 161 N.C. App. 534
 
 , 535,
 
 588 S.E.2d 548
 
 , 549 (2003). Because one panel of this Court cannot overrule another, we are bound to hold that the Shelleys' interlocutory appeal on this issue is permissible.
 
 In re Civil Penalty
 
 ,
 
 324 N.C. 373
 
 , 384,
 
 379 S.E.2d 30
 
 , 36 (1989). If the holdings in
 
 Greene
 
 ,
 
 Odom
 
 , and similar cases warrant reconsideration, it must come from this Court sitting en banc, or from our Supreme Court.
 

 We thus turn to the merits of the Shelleys' claim. Counties and other municipalities, as governmental agencies, enjoy the protections of governmental immunity.
 
 Magana
 
 ,
 
 183 N.C. App. at 147
 
 ,
 
 645 S.E.2d at 92
 
 . This sovereign immunity applies unless the county "consents to suit or waives its right to sovereign immunity."
 
 Hinson v. City of Greensboro
 
 ,
 
 232 N.C. App. 204
 
 , 210,
 
 753 S.E.2d 822
 
 , 827 (2014).
 

 *565
 
 A county may waive its immunity by purchasing liability insurance covering a particular risk. N.C. Gen. Stat. § 153A-435(a). But that waiver applies only "to the extent of insurance coverage."
 

 Id.
 

 In other words, "immunity is waived only to the extent that the [county] is indemnified by the insurance contract from liability for the acts alleged."
 
 Hinson
 
 ,
 
 232 N.C. App. at 210
 
 ,
 
 753 S.E.2d at 827
 
 . If the liability policy, by its plain terms, does not provide coverage for the alleged acts, then the policy does not waive governmental immunity.
 

 Id.
 

 When this Court examines policy provisions allegedly waiving governmental immunity, we must strictly construe the provision against waiver.
 
 Magana
 
 ,
 
 183 N.C. App. at 149
 
 ,
 
 645 S.E.2d at 92
 
 .
 

 A series of cases from this Court have examined how this waiver rule applies to an insurance policy like the one in this case, that provides
 
 excess
 
 liability coverage above the municipality's own self-insured retention. These cases uniformly have held that excess policies do not waive immunity when they are not triggered until the municipality first pays the entire amount of the self-insured retention.
 

 As this Court reasoned in
 
 Magana
 
 , if a municipality "has statutory immunity from liability for tort claims, it cannot be required to pay any part of the ... self-insured amount and, therefore, the excess policy will provide no indemnification."
 
 183 N.C. App. at 149
 
 ,
 
 645 S.E.2d at 93
 
 . In other words, because the county "is immune from negligence claims up to [the self-insured amount], it will never have a legal obligation to pay this self-insured amount and, thus, has not waived its immunity through the purchase of this excess liability insurance policy."
 
 Hinson
 
 ,
 
 232 N.C. App. at 212
 
 ,
 
 753 S.E.2d at 828
 
 .
 

 This case is indistinguishable from
 
 Magana
 
 and
 
 Hinson
 
 . The county moved to dismiss under Rule 12(b)(1) of the Rules of Civil Procedure and submitted evidence to support its motion. Among those submissions, the county produced an affidavit from its risk manager attaching the relevant terms of the county's excess liability policies. Those policies include a self-insured retention amount of $350,000 that must be paid by the county before coverage is triggered, and contain the following policy language:
 

 [W]e agree to indemnify the Insured for ultimate net loss in excess of the retained limit
 
 which the Insured becomes legally obligated to pay
 
 because of bodily injury, personal injury, advertising injury, or property damage which occurs during this policy period and to which this insurance applies. Our indemnification obligation
 
 shall not
 

 *566
 

 arise until the Insured itself has paid in full the entire amount of its retained limit
 
 . The retained limit must be paid by the Insured, and may not be paid or satisfied, in whole or in part, by any other source of payment, including but not limited to other insurance, or negated, in whole or in part, by any form of immunity to judgment or liability. No other obligation or liability to pay sums or perform acts or services is covered. The Insured's obligation to pay
 
 shall have been determined by judgment against the Insured after a contested suit or by written agreement, which has received our prior approval
 
 , between the Insured(s) and the claimant(s) or the claimant's legal representative.
 

 (Emphasis added.)
 

 We agree with the county that this language demonstrates that the excess policy does not waive its immunity with respect to the common law tort claims at issue here.
 

 *607
 
 The policy language states that the insurer's obligation to pay is not triggered until a judgment is entered against the county or the county agrees to pay the claim, with the insurer's approval. The Shelleys have not shown that either of these triggering events has occurred.
 

 The Shelleys argue that they were afforded no discovery into the terms of the policy, and that the trial court relied entirely on the risk manager's affidavit and the policy provisions attached to it, without "giving the Shelleys the opportunity to fully develop the record." But the Shelleys do not cite any evidence in the record that they
 
 asked
 
 for the opportunity to conduct discovery on this issue. We cannot fault the trial court for deciding this issue based on an uncontested affidavit received without objection from the Shelleys.
 

 Accordingly, on the record before this Court, and applying the settled rule from
 
 Hinson
 
 and
 
 Magana
 
 , the terms of this excess insurance policy do not waive the county's governmental immunity. The trial court therefore properly dismissed the Shelley's common law tort claims under Rule 12(b)(1) of the Rules of Civil Procedure based on the county's assertion of immunity.
 

 II. Dismissal of the declaratory judgment claim
 

 The Shelleys next argue that the trial court erred in dismissing their declaratory judgment claim against the county for failure to state a claim under Rule 12(b)(6).
 

 *567
 
 The trial court did not dismiss this claim based on governmental immunity. Thus, we must separately address whether we have jurisdiction to address this interlocutory ruling on appeal.
 
 See
 

 Richmond County Bd. of Educ. v. Cowell
 
 ,
 
 225 N.C. App. 583
 
 , 586,
 
 739 S.E.2d 566
 
 , 568 (2013) ;
 
 Bynum v. Wilson County
 
 ,
 
 228 N.C. App. 1
 
 , 6,
 
 746 S.E.2d 296
 
 , 300 (2013),
 
 rev'd in part on other grounds
 
 ,
 
 367 N.C. 355
 
 ,
 
 758 S.E.2d 643
 
 (2014).
 

 The Shelleys argue that their declaratory judgment claim is immediately appealable under the substantial rights doctrine because of the risk of inconsistent verdicts. But the Shelleys concede in their appellate brief that this declaratory judgment claim is "a reciprocal claim mirroring two other claims" asserted against them in the action below, both of which remain to be litigated. The dismissal of this sort of redundant declaratory judgment claim does not implicate substantial rights. Accordingly, we lack jurisdiction to address this portion of the appeal.
 

 III. Dismissal of the constitutional claim
 

 Finally, the Shelleys argue that the trial court erred in dismissing their constitutional claim against the county.
 

 As with the declaratory judgment claim, the constitutional claim was not dismissed based on governmental immunity, and we must therefore determine whether some other basis exists for exercising appellate jurisdiction.
 
 Richmond County Bd. of Educ.
 
 ,
 
 225 N.C. App. at 586
 
 ,
 
 739 S.E.2d at 568
 
 .
 

 The Shelleys argue that their constitutional claim involves issues of fact intertwined with other claims and defenses that remain in the case. They contend that, without an immediate appeal, there is a risk "of inconsistent factual determinations by two different juries." We agree. The Shelleys' constitutional claim, which we describe in more detail below, turns on facts concerning the permit and building code approval of the Shelleys' fence. Those fact issues also must be determined as part of other claims pending below. Accordingly, there is a sufficient risk of inconsistent verdicts to invoke our appellate jurisdiction under the substantial rights doctrine.
 
 Hamilton v. Mortg. Info. Servs., Inc
 
 .,
 
 212 N.C. App. 73
 
 , 79,
 
 711 S.E.2d 185
 
 , 190 (2011).
 

 We thus turn to the merits of the Shelleys' constitutional claim. The trial court dismissed that claim under Rule 12(b)(6) of the Rules of Civil Procedure for failure to state a claim on which relief could be granted. "This Court reviews the grant of a Rule 12(b)(6) motion to dismiss de novo."
 
 Jackson/Hill Aviation, Inc. v. Town of Ocean Isle Beach
 
 , --- N.C. App. ----, ----,
 
 796 S.E.2d 120
 
 , 123 (2017). "We examine whether the
 
 *568
 
 allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory."
 

 Id.
 

 "Dismissal is only appropriate if
 
 *608
 
 it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim."
 

 Id.
 

 We note at the outset that, in contrast to the other claims asserted by the Shelleys, their constitutional claim is quite vague. In the portion of the crossclaim describing this particular cause of action, the only specific factual allegation is that the county's actions "constitute a violation of the Shelleys' rights and effectively are an attempt to deprive the Shelleys of their property without due process of law." That brief statement provides little insight into what specific governmental acts violated the Shelleys' due process rights. But our Supreme Court has emphasized that "North Carolina is a notice pleading jurisdiction" and courts should not "deny a party his day in court because of his imprecision with the pen.''
 
 Mangum v. Raleigh Bd. of Adjustment
 
 ,
 
 362 N.C. 640
 
 , 644,
 
 669 S.E.2d 279
 
 , 283 (2008).
 

 When we view the allegations in the crossclaim as a whole, including other allegations that appear earlier in the crossclaim and that are incorporated by reference into the constitutional claim, we can discern a properly pleaded due process claim. In essence, the Shelleys allege that the county approved their fence and found that it complied with applicable building code and permit requirements. Then, after the time to administratively challenge those code and permitting determinations expired, and under pressure from other county residents, the county "fabricated" code or permit violations and used these new violations to challenge the construction of the fence. The Shelleys further allege that the county pursued these new code or permit violations outside the normal administrative and judicial review process and without providing the Shelleys with notice and an opportunity to be heard.
 

 These allegations, taken as true, are sufficient to state a valid constitutional claim. To state a claim for violation of procedural due process rights, the complainant must allege (1) that "the State has interfered with a liberty or property interest" and (2) that the State did not use "a constitutionally sufficient procedure to interfere with the liberty or property interest."
 
 Lipinski v. Town of Summerfield
 
 ,
 
 230 N.C. App. 305
 
 , 308,
 
 750 S.E.2d 46
 
 , 48-49 (2013). A "constitutionally sufficient procedure" requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner.
 
 Id.
 
 at 308-09,
 
 750 S.E.2d at 49
 
 .
 

 The allegations in the Shelleys' crossclaim, as summarized above, allege a valid procedural due process claim under this standard. In
 
 *569
 
 short, the Shelleys allege that the county reconsidered previously approved (and final) permit and code determinations without notifying the Shelleys or permitting them an opportunity to contest the decision through available legal means.
 

 Of course, our holding that the allegations in the complaint, taken as true, state a valid procedural due process claim does not mean that the Shelleys are likely to succeed on that claim. In its appellate brief, the county asserts that the Shelleys misstate the applicable permitting and administrative review processes, and that the Shelleys had ample notice and many opportunities to be heard, including through both the administrative process and the claims and defenses available in this action.
 

 We cannot address these arguments at the motion to dismiss stage. Indeed, at this stage, the Court cannot even examine the county's building code and permitting requirements.
 
 See
 

 Jackson/Hill Aviation, Inc.
 
 , --- N.C. App. at ----,
 
 796 S.E.2d at 123
 
 ("[O]ur Supreme Court repeatedly has held that courts cannot take judicial notice of the provisions of municipal ordinances."). Simply put, at the motion to dismiss stage, this Court is limited to reviewing the allegations contained within "the four corners of the complaint."
 

 Id.
 

 If, as the county contends in its appellate briefing, the Shelleys' allegations are plainly false, the county can make that showing in an appropriate motion for summary judgment.
 

 Conclusion
 

 For the reasons discussed above, we affirm the trial court's dismissal of the Shelleys' common law tort claims; we dismiss the Shelleys' appeal with respect to their declaratory judgment claim for lack of appellate jurisdiction; and we reverse the trial court's dismissal of the Shelley's procedural due process
 
 *609
 
 claim and remand for further proceedings on that claim.
 

 AFFIRMED IN PART; DISMISSED IN PART; REVERSED AND REMANDED IN PART.
 

 Chief Judge McGEE and Judge BERGER concur.