IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-494

 No. COA20-198

 Filed 21 September 2021

 Caldwell County, No. 13 CRS 54340

 STATE OF NORTH CAROLINA

 v.

 NANCY BENGE AUSTIN

 Appeal by defendant from judgment entered 24 May 2019 by Judge Lisa C.

 Bell in Caldwell County Superior Court. Heard in the Court of Appeals 14 April 2021.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General Mary
 Carla Babb, for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Daniel K.
 Shatz, for defendant.

 DIETZ, Judge.

¶1 Defendant Nancy Austin appeals her conviction for first degree murder after

 she shot and killed Dylan Short in her driveway.

¶2 Just before the shooting, Short drove his car into Austin’s driveway knowing

 that he was not welcome there and refused to leave. Short then shoved Austin’s adult

 daughter, in view of Austin, and a fight broke out. After Austin pulled out a gun and

 demanded that Short leave her property, Short reached for the gun and, at some

 point, a gunshot went off. After further fighting, a bystander saw Austin standing
 STATE V. AUSTIN

 2021-NCCOA-494

 Opinion of the Court

 over Short, who lay on the ground in the driveway pleading “Please, please, just let

 me go. Let me go.” Austin then stepped several feet back and shot Short in the head,

 killing him.

¶3 The State charged Austin with murder, and Austin asserted the castle doctrine

 defense, which is codified in North Carolina General Statute § 14-51.2. The trial court

 declined to resolve the defense in a pre-trial hearing and also denied Austin’s motion

 to dismiss at trial, concluding that there were fact issues to be resolved by a jury.

¶4 As explained below, the trial court properly declined to resolve the castle

 doctrine defense before trial. Where, as here, there are fact disputes concerning the

 castle doctrine’s applicability, those fact questions must be resolved by a jury. The

 trial court also properly denied the motion to dismiss because the State presented

 sufficient evidence to rebut the castle doctrine’s presumption in favor of the lawful

 occupant of a home, thus creating a fact issue concerning the doctrine’s applicability.

 Finally, the trial court’s jury instructions, viewed as a whole, properly instructed the

 jury on the elements of the castle doctrine. We therefore reject Austin’s arguments

 and find no error in the trial court’s judgment.

 Facts and Procedural History

¶5 In 2013, Defendant Nancy Austin lived in a home with her daughter, Sarah,

 and Sarah’s child. Dylan Short is the father of Sarah’s child. Short was once in a

 relationship with Sarah, but the two later broke up.
 STATE V. AUSTIN

 2021-NCCOA-494

 Opinion of the Court

¶6 After a violent incident between Short and Sarah at Austin’s home in the

 summer of 2012, Austin told Short he was not welcome on the property. Sarah

 resumed a relationship with Short in November 2013. In December 2013, Austin and

 Short exchanged Facebook messages in which Austin disapproved of Short’s

 relationship with her daughter. Austin also accused Short of attempting to run her

 off the road, which he acknowledged.

¶7 On 26 December 2013, Short spent the day with Sarah and then followed her

 home without her permission. Short had not been to the house in over a year. Austin

 was outside in the driveway, near a “no trespassing” sign, when Short arrived. Sarah,

 who had already arrived, got out of her car and took her child inside.

¶8 Short yelled at Sarah to stop and to talk to him. Austin told Short to leave.

 Sarah also told Short to leave, and Short then pushed her. Short was unarmed at the

 time. At this point, Austin took out a gun, pointed it at Short, told her daughter to go

 inside, and told Short to leave. Short refused to leave, telling Austin he did not have

 to leave because his child was inside the home.

¶9 Austin testified that she looked to see if her daughter had gone inside and,

 when she turned back, Short had “jumped” on her and reached for the gun. As Sarah

 was walking inside, she heard a gunshot. When she turned back around, Short and

 Austin were entangled, and Short was reaching around Austin’s back toward the gun.

 Sarah ran toward them and pushed Short. Sarah fell to the ground with Short,
 STATE V. AUSTIN

 2021-NCCOA-494

 Opinion of the Court

 struggled with him, then moved on top of him and put her hands around his neck.

 Sarah got up again to go back into the house and, as she walked away, heard a second

 gunshot. She turned around and saw that Austin, who was standing up at this time,

 had shot Short, who was on the ground. Austin told Sarah to call 911, which she did.

¶ 10 In statements to police officers that evening, Austin explained that she had

 previously told Short not to come on her property, that when he arrived, she told him

 to leave, and that Short refused to leave. She also told the officers about the struggle

 in the driveway and that Short had knocked her to the ground and grabbed for her

 gun. Lastly, she told the officers that Short was on the ground and within three feet

 of her when she shot him.

¶ 11 The State charged Austin with the first degree murder of Short. The case went

 to trial. At trial, Billy Herald, who was working on a nearby property about twenty-

 five to forty yards away from Austin’s home, testified that he had witnessed some of

 the incident. Herald testified that he saw Sarah drive into Austin’s driveway at a

 fairly high speed and then saw Short pull up behind her, yelling at her to stop. Herald

 stopped watching until he heard Short shout, “she’s got a loaded gun,” a few minutes

 later. He looked back and saw Short on his left knee with his hand up, and Austin

 pointing a gun at him. He stopped watching again and then, shortly after, he heard

 a gunshot. He looked back and saw Short behind Austin and Austin’s daughter

 jumping on top of Short, then Short falling to the ground. Herald testified that he
 STATE V. AUSTIN

 2021-NCCOA-494

 Opinion of the Court

 then saw Austin stand over Short, take two steps back, and then shoot Short at a

 distance of five to six feet away. Before Austin shot Short, Herald heard him say,

 “Please, please, just let me go. Let me go.”

¶ 12 Dr. Patrick Lantz, who performed the autopsy, testified that Short died from a

 single gunshot wound to the face. Lantz stated that he observed stippling on Short’s

 face, indicating that the shooting occurred at an intermediate range. Finally, Lantz

 testified that he would not expect stippling of this nature in a shooting with a range

 farther than three feet, but that it would depend on the ammunition used.

¶ 13 On 24 May 2019, the jury found Austin guilty of first degree murder and the

 court sentenced her to life without parole. Austin gave notice of appeal in open court.

 Analysis

¶ 14 Every issue Austin asserts on appeal concerns some aspect of a self-defense

 provision in our General Statutes commonly called the “castle doctrine.” See N.C.

 Gen. Stat. § 14-51.2.

¶ 15 “The ‘castle doctrine’ is derived from the principle that one’s home is one’s

 castle and is based on the theory that if a person is bound to become a fugitive from

 her own home, there would be no refuge for her anywhere in the world.” State v. Cook,

 254 N.C. App. 150, 157, 802 S.E.2d 575, 579 (2017) (Stroud, J. dissenting). The castle

 doctrine is a form of self-defense, but it is broader than the traditional self-defense

 doctrine because, when the statutory criteria are satisfied, the defendant no longer
 STATE V. AUSTIN

 2021-NCCOA-494

 Opinion of the Court

 has the burden to prove key elements of the traditional self-defense doctrine. N.C.

 Gen. Stat. § 14-51.2(b). With this overview in mind, we turn to Austin’s specific

 arguments on appeal.

 I. Pre-trial determination of castle doctrine defense

¶ 16 Austin first argues that the trial court erred by refusing to adjudicate her

 castle doctrine defense in a pre-trial hearing. Austin contends that, when a criminal

 defendant asserts the castle doctrine defense and moves to dismiss, the defendant

 has “the right to have a judge, rather than a jury, evaluate the evidence to determine

 whether she was immune under the statute.”

¶ 17 Austin’s argument turns on the specific language in the operative portion of

 the castle doctrine statute, which provides that a person satisfying the castle doctrine

 criteria “is immune from civil or criminal liability.” N.C. Gen. Stat. § 14-51.2(e).

 Austin argues that the use of the word “immunity” means that this is a question that

 must be resolved by the judge, not the jury.

¶ 18 The flaw in this argument is that the word “immunity” has different legal

 meanings depending on the context and, here, the context indicates that this is not a

 traditional immunity from prosecution that must be resolved by the court before trial.

 A traditional immunity is “not merely an affirmative defense to claims; it is a

 complete immunity from being sued in court.” Ballard v. Shelley, 257 N.C. App. 561,

 564, 811 S.E.2d 603, 605 (2018). In other words, it creates not merely an assurance
 STATE V. AUSTIN

 2021-NCCOA-494

 Opinion of the Court

 that no judgment can be entered against the person, but a right not to be forced into

 court to defend oneself. Id.

¶ 19 In the criminal context, the General Assembly signals a grant of this type of

 immunity by referring to it as “immunity from prosecution.” So, for example, the

 statute requiring trial courts to resolve an immunity issue pre-trial applies when the

 defendant “has been granted immunity by law from prosecution.” N.C. Gen. Stat.

 § 15A-954(a)(9). This type of immunity often arises when the government seeks to

 compel a person to testify who might otherwise assert the right against self-

 incrimination. See generally N.C. Gen. Stat. § 15A-1051 et seq.

¶ 20 Our General Statutes use the phrase “immunity from prosecution” repeatedly

 when describing this type of immunity in the criminal context. See, e.g., N.C. Gen.

 Stat. § 14-205.1 (granting “immunity from prosecution” to minors involved in

 soliciting prostitution); N.C. Gen. Stat. § 75-11 (granting “full immunity from

 criminal prosecution and criminal punishment” to persons compelled to testify

 against a corporation in certain consumer cases); N.C. Gen. Stat. § 90-96.2 (granting

 “limited immunity from prosecution” in the context of reporting drug overdoses); N.C.

 Gen. Stat. § 90-113.27 (granting “immunity from prosecution” to certain participants

 in needle exchange programs).

¶ 21 Here, by contrast, the castle doctrine provides immunity from “criminal

 liability.” In this context, the immunity is from a conviction and judgment, not the
 STATE V. AUSTIN

 2021-NCCOA-494

 Opinion of the Court

 prosecution itself. This conclusion is further supported by the distinction between

 traditional immunities from prosecution, which typically involve little or no fact

 determination, and the castle doctrine defense, which, as explained below, can involve

 deeply fact-intensive questions. Accordingly, we reject Austin’s argument that the

 castle doctrine statute granted her “the right to have a judge, rather than a jury,

 evaluate the evidence to determine whether she was immune under the statute.”

 Where, as here, the trial court determined that there were fact questions concerning

 the applicability of the castle doctrine defense, the trial court properly permitted the

 case to proceed to trial so that a jury can resolve those disputed facts.

 II. Motion to dismiss

¶ 22 Austin next argues that the trial court erred by denying her motion to dismiss

 for insufficiency of the evidence, based on the castle doctrine and a lack of

 premeditation and deliberation.

¶ 23 “This Court reviews the trial court’s denial of a motion to dismiss de novo.”

 State v. Smith, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). When a criminal

 defendant moves to dismiss, “the trial court is to determine whether there is

 substantial evidence (a) of each essential element of the offense charged, or of a lesser

 offense included therein, and (b) of defendant’s being the perpetrator of the offense.”

 State v. Earnhardt, 307 N.C. 62, 65–66, 296 S.E.2d 649, 651 (1982). “Substantial

 evidence is such relevant evidence as a reasonable mind might accept as adequate to
 STATE V. AUSTIN

 2021-NCCOA-494

 Opinion of the Court

 support a conclusion.” State v. Smith, 300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980). “In

 making its determination, the trial court must consider all evidence admitted,

 whether competent or incompetent, in the light most favorable to the State, giving

 the State the benefit of every reasonable inference and resolving any contradictions

 in its favor.” State v. Rose, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994).

¶ 24 The castle doctrine functions by creating a presumption of reasonable fear of

 imminent death or serious bodily harm in favor of a lawful occupant of a home, which

 in turn justifies the occupant’s use of deadly force. N.C. Gen. Stat. § 14-51.2.

 Specifically, the statute provides that the “lawful occupant of a home” is “presumed

 to have held a reasonable fear of imminent death or serious bodily harm to himself

 or herself when using defensive force that is intended or likely to cause death or

 serious bodily harm to another” if both of the following apply: (1) “The person against

 whom the defensive force was used was in the process of unlawfully and forcefully

 entering, or had unlawfully and forcibly entered, a home,” and (2) the person using

 “defensive force knew or had reason to believe that an unlawful and forcible entry or

 unlawful and forcible act was occurring or had occurred.” N.C. Gen. Stat. § 14-

 51.2(b)(1)–(2). The statute’s definition of “home” includes the home’s curtilage, such

 as the driveway at issue in this case. N.C. Gen. Stat. § 14-51.2(a)(1).

¶ 25 In effect, this provision eliminates the needs for lawful occupants of a home to

 show that they reasonably believed the use of deadly force was necessary to prevent
 STATE V. AUSTIN

 2021-NCCOA-494

 Opinion of the Court

 imminent death or serious bodily injury to themselves or others—a requirement of

 traditional self-defense. Instead, that belief is presumed when the statutory criteria

 are satisfied.

¶ 26 But, importantly, the statute has a separate section providing that this

 presumption “shall be rebuttable” and “does not apply” in certain circumstances set

 out in the statute:

 The presumption set forth in subsection (b) of this section
 shall be rebuttable and does not apply in any of the
 following circumstances:

 (1) The person against whom the defensive force is used
 has the right to be in or is a lawful resident of the home,
 motor vehicle, or workplace, such as an owner or lessee,
 and there is not an injunction for protection from domestic
 violence or a written pretrial supervision order of no
 contact against that person.

 (2) The person sought to be removed from the home, motor
 vehicle, or workplace is a child or grandchild or is otherwise
 in the lawful custody or under the lawful guardianship of
 the person against whom the defensive force is used.

 (3) The person who uses defensive force is engaged in,
 attempting to escape from, or using the home, motor
 vehicle, or workplace to further any criminal offense that
 involves the use or threat of physical force or violence
 against any individual.

 (4) The person against whom the defensive force is used is
 a law enforcement officer or bail bondsman who enters or
 attempts to enter a home, motor vehicle, or workplace in
 the lawful performance of his or her official duties, and the
 officer or bail bondsman identified himself or herself in
 accordance with any applicable law or the person using
 STATE V. AUSTIN

 2021-NCCOA-494

 Opinion of the Court

 force knew or reasonably should have known that the
 person entering or attempting to enter was a law
 enforcement officer or bail bondsman in the lawful
 performance of his or her official duties.

 (5) The person against whom the defensive force is used (i)
 has discontinued all efforts to unlawfully and forcefully
 enter the home, motor vehicle, or workplace and (ii) has
 exited the home, motor vehicle, or workplace.

 N.C. Gen. Stat. § 14-51.2(c).

¶ 27 One fair reading of this provision is that the presumption is rebuttable only in

 the five enumerated circumstances listed in the statute. That is, the statute

 announces that the presumption can be overcome and then provides the only five

 specific factual scenarios in which that is so.

¶ 28 But this Court and our Supreme Court rejected that interpretation several

 years ago. In State v. Cook, law enforcement officers kicked the door to the defendant’s

 bedroom while executing a search warrant and the defendant fired two shots at the

 door, narrowly missing one of the officers. The defendant asserted that he did not

 hear the officers announce their presence, that he thought an intruder was breaking

 into his house, that he was scared for his life, and that “he did not take aim at or

 otherwise have any specific intent to shoot the ‘intruder’ when he fired the shots.”

 254 N.C. App. 150, 152, 802 S.E.2d 575, 577 (2017), aff’d, 370 N.C. 506, 809 S.E.2d

 566 (2018).

¶ 29 The dissenting judge in the Court of Appeals argued that the defendant was
 STATE V. AUSTIN

 2021-NCCOA-494

 Opinion of the Court

 entitled to a castle doctrine instruction and the trial court erred by refusing to provide

 that instruction. Id. at 160, 802 S.E.2d at 581. The majority rejected that assertion,

 holding that “a defendant who testifies that he did not intend to shoot the attacker is

 not entitled to an instruction under N.C. Gen. Stat. § 14-51.2 because his own words

 disprove the rebuttable presumption that he was in reasonable fear of imminent

 harm.” Id. at 156, 802 S.E.2d at 578. The Supreme Court affirmed the Court of

 Appeals in a per curiam decision. State v. Cook, 370 N.C. 506, 809 S.E.2d 566 (2018).

¶ 30 We are bound by Cook to hold that the castle doctrine’s rebuttable presumption

 is not limited to the five scenarios listed in the statute. Instead, as explained in Cook,

 if the State presents substantial evidence from which a reasonable juror could

 conclude that a defendant did not have a reasonable fear of imminent death or serious

 bodily harm, the State can overcome the presumption and create a fact question for

 the jury. Thus, the castle doctrine, as interpreted in Cook, is effectively a burden-

 shifting provision, creating a presumption in favor of the defendant that can then be

 rebutted by the State.

¶ 31 Here, the State presented evidence that a bystander saw Austin standing over

 Short, who was lying unarmed in Austin’s driveway and pleading “Please, please, just

 let me go. Let me go.” The bystander saw Austin take several steps back and then

 shoot Short in the head from three to six feet away. Taken in the light most favorable

 to the State, this is sufficient evidence from which the jury could determine that the
 STATE V. AUSTIN

 2021-NCCOA-494

 Opinion of the Court

 State had rebutted the presumption and shown that Austin did not have a reasonable

 fear of imminent death or serious bodily harm when she shot Short in the head as he

 lay on the ground in her driveway.

¶ 32 Likewise, this evidence readily is sufficient to overcome a motion to dismiss

 based on lack of premeditation and deliberation. See State v. Childress, 367 N.C. 693,

 695, 766 S.E.2d 328, 330 (2014). Accordingly, the trial court did not err by denying

 Austin’s motion to dismiss.

 III. Jury instruction on Section 14-51.2

¶ 33 Finally, Austin argues that the court erred in its jury instruction on the castle

 doctrine and that this error prejudiced her.

¶ 34 This Court reviews challenges to the trial court’s jury instructions de novo.

 State v. Osorio, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009). We examine the

 instructions “as a whole” to determine if they present the law “fairly and clearly” to

 the jury. State v. Chandler, 342 N.C. 742, 751–52, 467 S.E.2d 636, 641 (1996). The

 purpose of a jury instruction “is to give a clear instruction which applies the law to

 the evidence in such manner as to assist the jury in understanding the case and in

 reaching a correct verdict.” State v. Smith, 360 N.C. 341, 346, 626 S.E.2d 258, 261

 (2006). An error in jury instructions “is prejudicial and requires a new trial only if

 there is a reasonable possibility that, had the error in question not been committed,

 a different result would have been reached at the trial.” State v. Dilworth, 274 N.C.
 STATE V. AUSTIN

 2021-NCCOA-494

 Opinion of the Court

 App. 57, 61, 851 S.E.2d 406, 409 (2020).

¶ 35 Here, the court instructed the jury that “Nancy Austin was justified in using

 deadly force if . . . [she] reasonably believed that the degree of force she used was

 necessary to prevent an unlawful and forceful entry or to terminate Dylan Short’s

 unlawful and forcible entry into her home.” The court then instructed the jury on the

 castle doctrine using language that mirrors the statute:

 Under North Carolina law, a lawful occupant of her home
 does not have a duty to retreat from an intruder under
 these circumstances. Furthermore, a person who
 unlawfully and by force enters or attempts to enter a
 person’s home is presumed to be doing so with the intent to
 commit an unlawful act involving force or violence.

 In addition, Nancy Austin is presumed to have held a
 reasonable fear of imminent death or serious bodily harm
 to herself or another when using defensive force that is
 intended or likely to cause death or serious bodily harm if
 both of the following apply:

 One, Dylan Short was in the process of unlawfully and
 forcefully entering or had unlawfully and forcibly entered
 Nancy Austin’s home; and Nancy Austin knew or had
 reason to believe that an unlawful and forcible entry or
 unlawful and forcible act was occurring or had occurred.
 The presumption of Nancy Austin’s reasonable fear of
 imminent death or serious bodily harm may be rebutted if
 you find beyond a reasonable doubt that Dylan Short had
 discontinued all efforts to unlawfully and forcefully enter
 the home and that Dylan Short had exited the home.

¶ 36 Every portion of this instruction is an accurate statement of the law. Moreover,

 this language was crafted with significant input from the parties during the charge
 STATE V. AUSTIN

 2021-NCCOA-494

 Opinion of the Court

 conference.

¶ 37 During the conference, the trial court informed the parties that the court

 believed the castle doctrine presumption could be rebutted by evidence beyond the

 five enumerated criteria in the statute but explained that the court had not prepared

 any specific instructions on what additional evidence could be considered to rebut the

 presumption:

 One thing that was not discussed yesterday and has not
 been included in my draft [of the jury instructions] are the
 – we didn’t discuss about the presumptions, the
 rebuttability of the presumption and what is required to
 rebut the presumption.

 I did bring up my interpretation of the statute being those
 five enumerated exceptions aren’t the only – I don’t think
 the statute says those are the limited reasons – or the
 limited ways in which the presumption can be rebutted,
 because of the way the statute’s worded. But we didn’t get
 to a discussion of that yesterday, so that is one part of your
 proposed instruction that’s not included in the draft but
 wasn’t intentionally excluded.

¶ 38 The State then explained that it believed the fifth enumerated criteria in the

 statute, N.C. Gen. Stat. § 14-51.2(c)(5), applied and that it was reluctant to propose

 additional instructions fleshing out other possible evidence that could rebut the

 presumption, beyond the express statutory criteria, because “the risk that the State

 would run, Your Honor – and we talked about it, trying to figure out some

 nonstatutory. Because the State’s reading and interpretation of that is that these are
 STATE V. AUSTIN

 2021-NCCOA-494

 Opinion of the Court

 not just the only ways that this could be rebutted, but there are others. But since we

 don’t have a lot of guidance with jury instructions – because they didn’t even address

 the way that it could be rebutted, in the jury instruction. So we didn’t want to go

 outside of what the law is providing in the statute, even though we do agree that

 there are additional ways that that could possibly be shown.”

¶ 39 Ultimately, the court chose not to include any additional instructions on how

 the castle doctrine presumption could be rebutted and simply instructed the jury that

 the castle doctrine created a presumption. The court also included a statement,

 consistent with the statute, that the presumption automatically is rebutted if the

 State proved “beyond a reasonable doubt that Dylan Short had discontinued all

 efforts to unlawfully and forcefully enter the home and that Dylan Short had exited

 the home.”

¶ 40 The crux of Austin’s argument is that the State should be barred on appeal

 from arguing that the jury could consider any basis to rebut the presumption other

 than the specific statutory criteria in N.C. Gen. Stat. § 14-51.2(c)(5) because the State

 “expressly disavowed any reliance on any non-statutory basis to rebut the

 presumption” during the charge conference. We are not persuaded that the State’s

 discussion with the trial court meant what Austin contends. But, in any event, the

 State, like any other party, cannot stipulate to what the law is. State v. Hanton, 175

 N.C. App. 250, 253, 623 S.E.2d 600, 603 (2006). “In a criminal trial the judge has the
 STATE V. AUSTIN

 2021-NCCOA-494

 Opinion of the Court

 duty to instruct the jury on the law arising from all the evidence presented.” Smith,

 360 N.C. at 346, 626 S.E.2d at 261.

¶ 41 Importantly, the trial court did not instruct the jury that the statutory criteria

 in N.C. Gen. Stat. § 14-51.2(c)(5) was the only means of rebutting the presumption,

 which would not be an accurate statement of the law under Cook. Instead, the court

 instructed the jury, correctly, that Austin was “presumed to have held a reasonable

 fear of imminent death or serious bodily harm to herself or another.” The court also

 instructed the jury that, if it found beyond a reasonable doubt that the specific

 statutory criteria in Section 14-51.2(c)(5) was satisfied, the presumption was rebutted

 as a matter of law. The court chose not to provide additional instructions to the jury

 concerning the particular circumstances, beyond the statutory criteria, that could

 overcome the presumption of reasonable fear of imminent death or serious bodily

 harm, instead leaving the jury to make that determination from the facts presented

 in the case.

¶ 42 When viewed as a whole, the trial court accurately instructed the jury on the

 castle doctrine defense and its rebuttable presumption using language that mirrored

 the statute. Chandler, 342 N.C. at 751–52, 467 S.E.2d at 641. We thus reject Austin’s

 arguments with respect to the presumption instruction.

¶ 43 Austin also argues that the trial court erred by treating the castle doctrine as

 “distinct from self-defense” because “there is a unitary justification defense for the
 STATE V. AUSTIN

 2021-NCCOA-494

 Opinion of the Court

 use of defensive force.” But again, the trial court properly instructed the jury on the

 issue of self-defense and the castle doctrine separately, using language that mirrored

 that statute and the applicable law. Indeed, Austin’s trial counsel told the trial court

 that Austin had “no problem” with the castle doctrine and self-defense instructions

 being separated, stating that they “should be seen as separate” because there are

 “different elements.” We thus reject this argument as well.

¶ 44 Finally, Austin also asserts several other instructional arguments that were

 not preserved in the trial court. We review these issues for plain error. State v.

 Goforth, 170 N.C. App. 584, 587, 614 S.E.2d 313, 315 (2005). “For error to constitute

 plain error, a defendant must demonstrate that a fundamental error occurred at

 trial.” State v. Lawrence, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012). Plain error

 is “applied cautiously and only in the exceptional case” where the error “seriously

 affect[s] the fairness, integrity or public reputation of the judicial proceedings.” Id.

 Here, because the trial court’s instructions as a whole properly instructed the jury on

 the law concerning self-defense and the statutory castle doctrine, we find no error

 with respect to these unpreserved instructional arguments and certainly no plain

 error.

 Conclusion

¶ 45 We find no error in the trial court’s judgment.

 NO ERROR.
 STATE V. AUSTIN

 2021-NCCOA-494

 Opinion of the Court

Judges ZACHARY and HAMPSON concur.