IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-834

No. COA22-305

Filed 20 December 2022

Mecklenburg County, No. 21 CVS 7323

FRED W. DEVORE, III as Guardian ad Litem for AZARIA HORTON, a Minor, Plaintiff,

v.

CHARLES LAMONTE SAMUEL, JR., STACY V. SAMUEL, KINDERCARE EDUCATION, LLC and KINDERCARE LEARNING CENTERS, LLC, Defendants.


KINDERCARE EDUCATION, LLC and KINDERCARE LEARNING CENTERS, LLC, Defendants/Third-Party Plaintiffs,

v.

CHARLOTTE-MECKLENBURG BOARD OF EDUCATION, and KEYERA GORDON, Third-Party Defendants.


Appeal by third-party defendant from order entered 7 January 2022 by Judge Jesse Caldwell, IV, in Mecklenburg County Superior Court. Heard in the Court of Appeals 18 October 2022.

*Shumaker, Loop & Kendrick, LLP, by Steven A. Meckler and Daniel R. Hansen, for third-party plaintiffs-appellees.*

*J. Melissa Woods and Hope A. Root for third-party defendant-appellant Charlotte-Mecklenburg Board of Education.*


DIETZ, Judge.

¶ 1 This case presents an issue of first impression concerning the waiver of governmental immunity for local school boards in school bus negligence cases. As explained below, we hold that the limited waiver of governmental immunity in these bus negligence cases does not permit a defendant to join a local school board as a third-party defendant in a court proceeding on claims of indemnity or contribution.

¶ 2 Although our State's case law permits parties to join the State and state agencies in these third-party proceedings, the applicable statutes and rules do not unambiguously permit joinder of local governmental entities. Accordingly, applying the principle that we must strictly construe these immunity provisions against waiver, we hold that these indemnification and contribution claims are permissible only in the Industrial Commission.

**Facts and Procedural History**

¶ 3 In June 2018, a Charlotte-Mecklenburg Schools bus dropped off an elementary school student at an afterschool childcare center operated by Defendants KinderCare Education, LLC, and KinderCare Learning Centers, LLC (collectively, "KinderCare"). As the child crossed the street to the KinderCare center, Defendant Charles Samuel struck the child with his SUV.

¶ 4 Plaintiff brought this negligence action on behalf of the injured child against a number of defendants, including KinderCare. Plaintiff did not assert claims against the school bus driver or the Charlotte-Mecklenburg Board of Education, who

employed the bus driver. KinderCare later filed a third-party complaint against the Charlotte-Mecklenburg Board of Education and the bus driver, alleging claims for contribution and indemnity.

¶ 5     The school board moved to dismiss on the ground that the third-party claims were barred by governmental immunity. After a hearing, the trial court denied the motion. The school board timely appealed. Although the trial court's order is interlocutory, we possess appellate jurisdiction because the challenged order concerns an issue of governmental immunity. *Ballard v. Shelley*, 257 N.C. App. 561, 564, 811 S.E.2d 603, 605 (2018).

## Analysis

¶ 6     "Counties and other municipalities, as governmental agencies, enjoy the protections of governmental immunity." *Ballard v. Shelley*, 257 N.C. App. 561, 564, 811 S.E.2d 603, 606 (2018). This governmental immunity applies to a local school board because it "is a governmental agency, and is therefore not liable in a tort or negligence action except to the extent that it has waived its governmental immunity pursuant to statutory authority." *Magana v. Charlotte-Mecklenburg Bd. of Educ.*, 183 N.C. App. 146, 148, 645 S.E.2d 91, 92 (2007).

¶ 7     We review claims of governmental immunity *de novo. Wray v. City of Greensboro*, 370 N.C. 41, 47, 802 S.E.2d 894, 898 (2017). Waivers of governmental immunity "may not be lightly inferred" and statutes purportedly waiving this

immunity "must be strictly construed." *Guthrie v. N. Carolina State Ports Auth.*, 307 N.C. 522, 537–38, 299 S.E.2d 618, 627 (1983); *Magana*, 183 N.C. App. at 149, 645 S.E.2d at 92.

## I. Waiver of immunity for indemnity/contribution claims

¶ 8 We begin by examining KinderCare's argument that the school board may be joined as a third party in this court proceeding because a series of statutes waive the school board's governmental immunity for this type of third-party claim in the court system.

¶ 9 Importantly, the parties do not dispute that KinderCare's third-party claims could be asserted against the school board in the Industrial Commission under the Tort Claims Act. In other words, this dispute is not about whether governmental immunity totally bars these claims. Instead, the issue is whether the school board's statutory waiver of immunity is limited to claims in the Industrial Commission, or whether it is broader and applies to third-party claims asserted in court.

¶ 10 To understand KinderCare's argument, we must first examine the series of statutes and rules on which it is based. We begin with Rule 14 of the North Carolina Rules of Civil Procedure. Rule 14 "permits a defendant in the State courts to sue a person not a party to the action who is or may be liable to the defendant for all or part of the plaintiff's claim against the defendant." *Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 329, 293 S.E.2d 182, 185 (1982). Subsection (c) of the rule provides that,

notwithstanding the Tort Claims Act, the State of North Carolina and state agencies

may be joined as third parties in tort actions:

> Rule applicable to State of North Carolina. –
> Notwithstanding the provisions of the Tort Claims Act, the
> State of North Carolina may be made a third party under
> subsection (a) or a third-party defendant under subsection
> (b) in any tort action. In such cases, the same rules
> governing liability and the limits of liability of the State
> and its agencies shall apply as is provided for in the Tort
> Claims Act.

N.C. Gen. Stat. § 1A-1, Rule 14(c).

Similarly, the Uniform Contribution Among Tort-Feasors Act states that the

right to contribution "shall apply to tort claims against the State. However, in such

cases, the same rules governing liability and the limits of liability shall apply to the

State and its agencies as in cases heard before the Industrial Commission." N.C. Gen.

Stat. § 1B-1(h).

Our Supreme Court has interpreted Rule 14 and N.C. Gen. Stat. § 1B-1(h) as

a waiver of sovereign immunity that permits the State to "be joined as a third-party

defendant, whether in an action for contribution or in an action for indemnification,

in the State courts," subject to the limitations set out in those provisions. *Teachy*, 306

N.C. at 332, 293 S.E.2d at 187. In other words, *Teachy* interpreted these rules as

expanding the limited waiver in the Tort Claims Act—one which requires the claims

to be brought in the Industrial Commission—to permit third party claims in court

proceedings.

¶ 13        Thus, as the parties acknowledge, *the State* and *state agencies* can be joined as third-party defendants in court proceedings for claims of contribution or indemnification under *Teachy*. The critical question in this appeal is whether a *local school board* likewise may be joined in these court proceedings.

¶ 14        It is well settled that a local school board is not "the State of North Carolina" for ordinary legal purposes. There is a difference between the State and state agencies—which possess sovereign immunity—and local government entities such as local school boards—which possess only governmental immunity, not sovereign immunity. *See, e.g., State ex rel. Stein v. Kinston Charter Acad.*, 379 N.C. 560, 2021-NCSC-163, ¶¶ 22, 26 (distinguishing between state agencies and local governmental school entities).

¶ 15        But KinderCare points to a provision of the Tort Claims Act governing claims "against county and city boards of education for accidents involving school buses or school transportation service vehicles." N.C. Gen. Stat. § 143-300.1. In Section 143-300.1, the General Assembly provided that the liability of a local school board in school bus negligence cases "shall be the same in all respects" as a similar claim against the State Board of Education:

>       Claims against county and city boards of education for accidents involving school buses or school transportation service vehicles.

> (a) The North Carolina Industrial Commission shall have jurisdiction to hear and determine tort claims against any county board of education or any city board of education [for school bus negligence] when:
>
> > (1) The driver is an employee of the county or city administrative unit of which that board is the governing body, and the driver is paid or authorized to be paid by that administrative unit . . .
>
> . . . *The liability of such county or city board of education*, the defenses which may be asserted against such claim by such board, the amount of damages which may be awarded to the claimant, and the procedure for filing, hearing and determining such claim, the right of appeal from such determination, the effect of such appeal, and the procedure for taking, hearing and determining such appeal *shall be the same in all respects as is provided in this Article with respect to tort claims against the State Board of Education* except as hereinafter provided.

N.C. Gen. Stat. § 143-300.1 (emphasis added).

¶ 16        KinderCare relies on this statutory language to assert that "the process for determining a local school board's liability for negligent school-bus operation" must be "undertaken just as it would be if the local board were the State Board of Education." It follows, according to KinderCare, that for purposes of school bus negligence claims, a local school board *is* the State Board of Education. And, because the State Board of Education is a state agency, KinderCare further argues that the local school board in this case can be joined as a third-party defendant under Rule 14 and N.C. Gen. Stat. § 1B-1(h) even though those provisions only apply to the State

and state agencies.

¶ 17 The flaw in this argument is that the statute does not actually say that, in school bus negligence cases, a local school board is considered the State Board of Education. Instead, the statute explains that a local school board's *liability*, together with other aspects of the case such as the "amount of damages," the "procedure for filing, hearing and determining such claim," and "the right of appeal from such determination," shall be the same as provided "with respect to tort claims against the State Board of Education." N.C. Gen. Stat. § 143-300.1.

¶ 18 This language suggests that the General Assembly understood these local school boards are *not* the State Board of Education. But because these local entities now employ most bus drivers, the State chose to waive these local entities' governmental immunity, as it did with the State Board of Education's sovereign immunity, and to apply the same framework for suits against these local entities that apply if the school bus driver were employed by the State Board of Education. This waiver, though, is a limited one. Section 143-300.1 requires the claim to be brought in the Industrial Commission and does not (at least, on its own) permit a school bus negligence claim to be brought in the court system.

¶ 19 As noted above, in interpreting this provision, and the corresponding provisions of Rule 14 and N.C. Gen. Stat. § 1B-1(h), we are governed by the well-settled rule that waiver of governmental immunity "may not be lightly inferred" and

that statutes purporting to waive this immunity "must be strictly construed." *Guthrie*, 307 N.C. at 537–38, 299 S.E.2d at 627; *Magana*, 183 N.C. App. at 149, 645 S.E.2d at 92. Applying this principle here, we hold that the language of N.C. Gen. Stat. § 143-300.1 does not unambiguously provide that local school boards are considered a state agency (that is, considered the State Board of Education) for purposes of third-party actions under Rule 14 and N.C. Gen. Stat. § 1B-1(h). Strictly construing Section 143-300.1, it is a limited waiver that permits these claims only in the Industrial Commission.

¶ 20     This result stems not only from the plain language of N.C. Gen. Stat. § 143-300.1, but also the fact that it was enacted by the General Assembly *before* Rule 14 and N.C. Gen. Stat. § 1B-1(h)—meaning the legislature could not have crafted this language with the intent to permit local school boards to be joined in third party actions under these later-enacted statutes. Moreover, when the legislature enacted Rule 14 and N.C. Gen. Stat. § 1B-1(h), it chose not to include school boards or other local governmental entities in the language of these provisions, instead limiting them to the State and state agencies.

¶ 21     This result is reinforced by the Supreme Court's holding in *Teachy*. There, the Supreme Court acknowledged that "there exists in North Carolina a common law right to indemnification of a passively negligent tort-feasor from an actively negligent tort-feasor." *Teachy*, 306 N.C. at 332, 293 S.E.2d at 186–87. The Court further

observed that the "right to indemnification arises out of a tort claim, the State's immunity to which was abrogated by the Tort Claims Act." *Id.* at 332, 293 S.E.2d at 187.

¶ 22 Thus, the Court held, because the State waived immunity for tort claims, it had also waived immunity for corresponding third-party indemnification and contribution claims. But, importantly, the Court went on to observe that the "only controversy is whether the State courts are *the proper forum* for such actions." *Id.* (emphasis added). The Court made this observation because, ordinarily, tort claims against the State can be brought *only* in the Industrial Commission.

¶ 23 Simply put, the ultimate holding in *Teachy*—that the third-party claims against the State could be asserted in the court system—is governed by two factors: (1) that the Tort Claims Act waives immunity for the State and state agencies for tort claims, and (2) that because of this waiver of immunity, the express reference to the State in the language of Rule 14 and N.C. Gen. Stat. § 1B-1(h) authorizes litigants to join the State and its agencies as third parties in claims of contribution or indemnity sounding in tort.

¶ 24 With school bus negligence claims against local school boards, by contrast, we have only the first of these two factors—the waiver of immunity under the Tort Claims Act. The second factor—an express statutory authorization to pursue the claim outside the Industrial Commission—does not exist. Without that statutory

authorization, *Teachy* and its progeny do not permit these claims to be brought in any forum other than the Industrial Commission.

¶ 25        We acknowledge that our strict construction of these provisions means KinderCare must assert its contribution and indemnity claims against the school board in the Industrial Commission. That will create a second, parallel proceeding and consume judicial resources that could be spared if the school board were joined as a third party in this action. But this Court has no authority to expand the limited waiver of immunity enacted by the General Assembly, which confines these claims to the Industrial Commission. Strictly construing these provisions, as we must, local school boards are not "the State" for purposes of Rule 14 and N.C. Gen. Stat. § 1B-1(h). If this result is not intended, then the General Assembly can amend N.C. Gen. Stat. § 143-300.1, or amend Rule 14 and N.C. Gen. Stat. § 1B-1(h), to clarify that these third-party claims against local school boards may be brought in a court proceeding as well.

¶ 26        In sum, we hold that the limited waiver of governmental immunity for school bus negligence claims against local school boards applies only to claims brought in the Industrial Commission. To the extent the trial court relied on this theory of waiver to deny the school board's motion to dismiss, the ruling was error.

## II.    Waiver of immunity through purchase of insurance

¶ 27        KinderCare also argues that the school board waived its governmental

immunity through the purchase of insurance.

¶ 28      Under N.C. Gen. Stat. § 115C-42, "local boards can elect to waive their governmental immunity from tort actions in North Carolina's superior courts by purchasing liability insurance." *Martinez v. Wake Cty. Bd. Of Educ.*, 258 N.C. App. 466, 471, 813 S.E.2d 658, 662 (2018). The waiver of immunity through liability insurance applies only to the extent that the school board "is indemnified by the insurance contract from liability for the acts alleged." *Hinson v. City of Greensboro*, 232 N.C. App. 204, 210, 753 S.E.2d 822, 827 (2014). "If the liability policy, by its plain terms, does not provide coverage for the alleged acts, then the policy does not waive governmental immunity." *Ballard*, 257 N.C. App. at 565, 811 S.E.2d at 606. As with other claims of waiver, when this Court "examines policy provisions allegedly waiving governmental immunity, we must strictly construe the provision against waiver." *Id.*; *Magana*, 183 N.C. App. at 149, 645 S.E.2d at 92.

¶ 29      Here, the school board purchased an excess liability policy that applies above the school board's $1,000,000 self-insured retention. The policy expressly states that it provides no coverage unless the school board first becomes liable for, and pays, the full amount of the self-insured retention. The policy further states that "this policy is not intended by the Insured to waive its governmental immunity" and that "this policy provides coverage only for occurrences or wrongful acts for which the defense of governmental immunity is clearly not applicable or for which, after the defenses

are asserted, a court of competent jurisdiction determines the defense of governmental immunity not to be applicable."

¶ 30        As KinderCare acknowledges, this Court repeatedly has held that this type of excess liability coverage does not waive governmental immunity. *See, e.g.*, *Magana*, 183 N.C. App. at 148–49, 645 S.E.2d at 92–93; *Doe v. Charlotte-Mecklenburg Bd. of Educ.*, 222 N.C. App. 359, 731 S.E.2d 245 (2012). KinderCare asserted in its appellee's brief that our Supreme Court has never addressed this question and that this Court's precedent "are ripe for overturning as illogical, against public policy, and unfair to every family with public-school-aged children." At oral argument, KinderCare further explained that it sought to preserve this argument for further review in the Supreme Court.

¶ 31        We must follow *Magana* and its progeny as these cases are indistinguishable and controlling. *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 36 (1989). Thus, to the extent that the trial court relied on this theory of waiver to deny the school board's motion to dismiss, the ruling was error. We acknowledge that KinderCare has preserved its challenge to this line of cases should it seek further appellate review on this issue.

¶ 32        Having concluded that there was no basis in the record before us to find a waiver of the school board's governmental immunity for these third-party claims in the court system, we reverse the trial court's order and remand for entry of an order

granting the school board's motion to dismiss.

## Conclusion

We reverse the trial court's order and remand for entry of an order granting the Charlotte-Mecklenburg Board of Education's motion to dismiss.

REVERSED AND REMANDED.

Judges CARPENTER and GRIFFIN concur.