NO. COA13-404

NORTH CAROLINA COURT OF APPEALS

Filed: 4 February 2014

JAMES HINSON,
    Plaintiff,

    v.
                                  Guilford County
                                  No. 10 CVS 9711

CITY OF GREENSBORO, DAVID WRAY,
former Police Chief of the City of
Greensboro, in his official and
individual capacity, and RANDALL
BRADY, former Deputy Police Chief
of the City of Greensboro, in his
official and individual capacity,
    Defendants.


Appeal by defendants from order entered 18 December 2012 by Judge Edwin G. Wilson, Jr., in Guilford County Superior Court. Heard in the Court of Appeals 8 October 2013.

> *Ferguson Chambers & Sumpter, P.A., by James E. Ferguson, II, for plaintiff-appellee James Hinson.*
>
> *Van Laningham Duncan PLLC, by Allison O. Van Laningham, Alan W. Duncan, and L. Cooper Harrell, for defendant-appellant City of Greensboro.*
>
> *Smith, James, Rowlett & Cohen, LLP, by Seth R. Cohen, and Carruthers & Roth, P.A., by Kenneth R. Keller, for defendant-appellants Randall Brady and David Wray.*


McCULLOUGH, Judge.


Defendants City of Greensboro, David Wray, and Randall Brady appeal from a trial court's interlocutory order, denying their

motions to dismiss plaintiff James Hinson's complaint, except as to plaintiff's claim for punitive damages against defendant City of Greensboro.  Based on the following reasons, we reverse the trial court's denial of defendants' motion to dismiss with respect to plaintiff's State claims against defendant City of Greensboro and defendants David Wray and Randall Brady in their official capacities.

## I.   Background

On 30 May 2008, plaintiff James Hinson filed a complaint against defendant City of Greensboro ("defendant Greensboro"), David Wray, former Police Chief of the City of Greensboro, in his official and individual capacity ("defendant Wray"), and Randall Brady, former Deputy Police Chief of the City of Greensboro, in his official and individual capacity ("defendant Brady") (collectively "defendants").  Plaintiff sought compensation and alleged that defendants had subjected plaintiff to discrimination on the basis of race, conspired to discriminate on the basis of race, and conspired to injure plaintiff in his reputation and profession.  Plaintiff amended this complaint on 6 February 2009. On 4 September 2009, plaintiff filed a voluntary dismissal of his claims, without prejudice.

Plaintiff filed a second complaint on 3 September 2010. The complaint alleged the following, in pertinent part: Plaintiff, an African-American, started working for the Police Department of the City of Greensboro in 1991 as a police officer in training. Plaintiff received numerous awards and received evaluations at the level of "exceeds expectations" and "superior performance" from the years 2000 through 2010. On 1 December 2001, plaintiff was promoted to Lieutenant. In 2003 and 2004, Chief of Police defendant Wray and Deputy Police Chief defendant Brady began "targeting plaintiff and creating problems for him in his workplace because of plaintiff's race."

The complaint further alleged that in 2003, defendants Wray and Brady directed two officers to gather pictures of various black officers employed by the Greensboro Police Department, including a photograph of plaintiff, to be used in line-up books or to be used in line-up photos while similarly situated white officers were not treated in this manner. From 2003 to 2004, defendants Wray and Brady caused some black officers of the City of Greensboro Police Department, including plaintiff, to be investigated by the Special Investigation Division ("SID") for alleged misconduct when SID was not created for this purpose. The Criminal Investigation Division ("CID") and Internal Affairs units were designed to

investigate matters involving Greensboro Police Officers. Defendants required white officers suspected of wrongdoing to be investigated by the CID, Internal Affairs Division, or caused some white officers not to be investigated at all.

Plaintiff was transferred from the Operation Support Division to the Central Division under the direction of a Commanding Officer who required plaintiff to complete a detailed monthly schedule. Plaintiff alleges that similarly situated white officers were not treated in this manner. Plaintiff's department-issued computer was installed with a device that would monitor his activity while no other lieutenants in the Greensboro Police Department were monitored. Plaintiff filed a grievance alleging retaliation and a hostile work environment but dropped the grievance after a meeting on 2 February 2005 where defendant Wray, defendant Brady, an Assistant Chief, a Commanding Officer, and Police Attorney were present. In March 2005, at the instruction of defendant Wray, a tracking device was placed on plaintiff's patrol car. Defendant Brady advised plaintiff that he was under surveillance because he was "possibly working off duty while on duty in violation of the Greensboro Police Department Departmental Directives and Procedures." Plaintiff alleged that his race was the motivation in initiating these investigations.

Defendant Wray falsely reported to the City Manager, Deputy City Manager, City Attorney, and media that plaintiff was suspected of being associated with illegal drug activity and other criminal activity. On 17 June 2005, plaintiff was suspended by defendant Wray for alleged on-going relationships with prostitutes and others who have a reputation in the community for involvement in criminal activity. Defendant Wray also delivered a public media statement falsely alleging that plaintiff was part of an "ongoing multi-jurisdictional criminal investigation" and that plaintiff's actions were under "internal review." Even though plaintiff was cleared by SID for any alleged wrongdoing, defendant Wray initiated an additional investigation of plaintiff by hiring retired and former officers of the Internal Affairs Division. Defendants Brady and Wray approved an additional investigation which did not adhere to the Greensboro Police Department's policies and Standard Operating Procedures. It was completed on 31 August 2005. On 5 June 2005, plaintiff was placed on leave. He was reinstated in January 2006. Since 2001, plaintiff has not been promoted and has not received any awards or commendations within the department.

Plaintiff's complaint alleged discrimination on the basis of his race, conspiracy to discriminate on the basis of race, and conspiracy to injure plaintiff and his reputation and profession

in violation of federal law, 42 USC § 1981, § 1983, and § 1985 and in violation of North Carolina common law.  Plaintiff argued that defendants had waived their governmental immunity by the purchase of liability insurance, as provided in N.C. Gen. Stat. § 160A-485[1], and that defendant Greensboro was liable as *respondeat superior* as to each of the state common law claims against defendants Wray and Brady.

On 22 November 2010, defendant Wray and defendant Brady filed motions to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure.  On 24 November 2010, defendant Greensboro filed a motion to dismiss pursuant to Rule 12(b)(1), 12(b)(2), and 12(b)(6).

Following a hearing held on 16 October 2012, the trial court entered an order on 18 December 2012.  The order denied defendant Wray's motion to dismiss and defendant Brady's motion to dismiss. The order denied defendant Greensboro's motion to dismiss, except

---

[1]N.C.G.S. § 160A-485(a) (2013) states that "[a]ny city is authorized to waive its immunity from civil liability in tort by the act of purchasing liability insurance. Participation in a local government risk pool pursuant to Article 23 of General Statute Chapter 58 shall be deemed to be the purchase of insurance for the purposes of this section.  Immunity shall be waived only to the extent that the city is indemnified by the insurance contract from tort liability.  No formal action other than the purchase of liability insurance shall be required to waive tort immunity, and no city shall be deemed to have waived its tort immunity by any action other than the purchase of liability insurance. . . ."

as to the claim for punitive damages against defendant Greensboro. As to that claim only, the motion to dismiss was allowed.

From this order, defendants appeal.

## II.  Standard of Review

"On appeal of a 12(b)(6) motion to dismiss for failure to state a claim, our Court conducts a de novo review[.]" *Ventriglia v. Deese*, 194 N.C. App. 344, 347, 669 S.E.2d 817, 819-820 (2008) (citation omitted).  "We consider 'whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory.'" *Bridges v. Parrish*, 366 N.C. 539, 541, 742 S.E.2d 794, 796 (2013) (citation omitted).  "The court must construe the complaint liberally and should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief." *Enoch v. Inman*, 164 N.C. App. 415, 417, 596 S.E.2d 361, 363 (2004) (citation and quotation marks omitted).

"Dismissal is proper, however, when one of the following three conditions is satisfied:  (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily

defeats the plaintiff's claim." *Newberne v. Dep't of Crime Control & Pub. Safety*, 359 N.C. 782, 784, 618 S.E.2d 201, 204 (2005) (citation and quotation marks omitted).

### III. Discussion

### A. Scope of Review

As a preliminary matter, we must first identify the issues that are properly before this Court.

"This Court has held that appeals from interlocutory orders raising issues of governmental or sovereign immunity affect a substantial right sufficient to warrant immediate appellate review." *Williams v. Devere Const. Co., Inc.*, __ N.C. App. __, __, 716 S.E.2d 21, 25 (2011) (citation omitted). However, this only applies "for denial of a motion to dismiss under Rules 12(b)(2), 12(b)(6), and 12(c), or a motion for summary judgment under Rule 56. We cannot review a trial court's order denying a motion to dismiss under Rule 12(b)(1)." *Horne v. Town of Blowing Rock*, __ N.C. App. __, __, 732 S.E.2d 614, 621 (2012). Therefore, defendants' challenges to the trial court's denial of their motion to dismiss under Rule 12(b)(2) and 12(b)(6) based on governmental immunity grounds are properly before us.

Defendants have also sought immediate review of the trial court's denial of their motion to dismiss based on non-immunity

related challenges by petitioning this Court.[2]  However, defendants have not stated how a substantial right would be lost absent immediate appellate review of these non-immunity related challenges.  Because it is well established that "[i]t is not the duty of this Court to construct arguments for or find support for appellant's right to appeal from an interlocutory order" and that "the appellant has the burden of showing this Court that the order deprives the appellant of a substantial right which would be jeopardized absent a review prior to a final determination on the merits[,]" we decline to review the non-immunity related challenges to the trial court's denial of defendants' motions to dismiss.  *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 380, 444 S.E.2d 252, 254 (1994) (citations omitted).  *See*

---

[2]The non-immunity related arguments advanced by defendants consist of claims that plaintiff's cause of action on the basis of race in violation of 42 U.S.C. § 1981 was time-barred; that defendant Greensboro could not be held liable on the basis of *respondeat superior*; that plaintiff's claim pursuant to 42 U.S.C. § 1983 is a new claim that cannot be included based on the "savings provision" of Rule 41(a) of the North Carolina Rules of Civil Procedure; that plaintiff's discrimination claim in violation of 42 U.S.C. § 1983 for violation of 42 U.S.C. § 1981 is time-barred; that defendants cannot be parties to a conspiracy; that plaintiff cannot show an agreement that would support a civil conspiracy due to the intracorporate immunity doctrine; that the parties' signed "Memorandum of Understanding" operated as an accord and satisfaction to bar plaintiff's claims; and that plaintiff's 2010 complaint did not properly allege claims against defendants Wray and Brady in their individual capacities, thereby violating Rule 41(a) and being barred by the statute of limitations.

*Bynum v. Wilson County*, __ N.C. App. __, __, 746 S.E.2d 296, 299-300 (2013) (granting review of an interlocutory order raising issues of governmental or sovereign immunity but limiting the scope of review to only immunity-related challenges).

Based on the foregoing, defendants are not entitled to immediate appellate review of the trial court's denial of their motions to dismiss on the basis of any non-immunity related arguments and we dismiss those portions of their appeal that rely on non-immunity related issues. Furthermore, we deny defendant's petitions for writ of certiorari, requesting that our Court review the entirety of the 18 December 2012 Order, including non-immunity related arguments.

## B.   Sovereign Immunity

Defendants argue that plaintiff's state law claims of discrimination on the basis of race, conspiracy to discriminate on the basis of race, and conspiracy to injure plaintiff in his reputation and profession all fail under the doctrine of governmental immunity.

It is well established that "[s]overeign immunity shields the State, its agencies, and officials sued in their official capacities from suit on state law claims unless the State consents to suit or waives its right to sovereign immunity." *Toomer v.*

*Garrett*, 155 N.C. App. 462, 480, 574 S.E.2d 76, 91 (2002) (citation omitted). "The rule of sovereign immunity applies when the governmental entity is being sued for the performance of a governmental, rather than proprietary, function." *Dalenko v. Wake Cty. Dep't of Human Servs.,* 157 N.C. App. 49, 55, 578 S.E.2d 599, 603 (2003) (citation omitted). "Law enforcement is well-established as a governmental function, and includes the training and supervision of officers by a police department." *Pettiford v. City of Greensboro*, 556 F. Supp. 2d 512, 524 (2008) (citations and quotation marks omitted).

"A [city] may, however, waive such immunity through the purchase of liability insurance. [I]mmunity is waived only to the extent that the [city] is indemnified by the insurance contract from liability for the acts alleged." *Satorre v. New Hanover County Bd. Of Comm'rs*, 165 N.C. App. 173, 176, 598 S.E.2d 142, 144 (2004) (citations and quotation marks omitted). A municipality may also waive its immunity by participating in a local government risk pool. N.C. Gen. Stat. § 160A-485(a) (2011). "In order to overcome a defense of [sovereign] immunity, the complaint must specifically allege a waiver of [sovereign] immunity. Absent such an allegation, the complaint fails to state a cause of action."

*Green v. Kearney*, 203 N.C. App. 260, 268, 690 S.E.2d 755, 762 (2010) (citation omitted).

We find *Pettiford v. City of Greensboro*, 556 F. Supp. 2d 512 (M.D.N.C. 2008), to be instructive on the issue before us. In *Pettiford*, plaintiffs Nicole and Anthony Pettiford sought civil damages based on alleged misconduct arising from an investigation by the Greensboro Police Department which is operated and owned by the defendant City of Greensboro. *Id.* at 515. The plaintiffs filed the action in the Superior Court of Guilford County, North Carolina, seeking recovery under the United States Constitution, pursuant to 42 U.S.C. § 1983, the North Carolina Constitution, and the common law of negligence. *Id.* at 516. The City of Greensboro removed the action on the grounds of federal question jurisdiction. *Id.* In lieu of answering, the City of Greensboro filed a motion to dismiss and a supplemental motion to dismiss pursuant to Rule 12(b)(1), (b)(2), (b)(6) and (b)(7)[3] of the Federal Rules of Civil Procedure. *Id.*

---

[3]Rule 12(b) of North Carolina Rules of Civil Procedure provides the following, in pertinent part: "Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, crossclaim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) Lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, . . . (6) Failure to state a claim upon which relief can be granted, (7) Failure to join a

The *Pettiford* court noted that the City of Greensboro acknowledged its participation in a Local Government Excess Liability Fund ("Fund") and purchased an excess liability insurance policy, but that "neither constitute[d] a waiver of its immunity." *Id.* at 525. Uncontested evidence established that the City of Greensboro is self-insured up to $100,000.00 and that the Fund pays claims between $100,000.00 and $3,000,000.00, though the City of Greensboro is obligated to repay the Fund in the entirety. *Id.* The court in *Pettiford* concluded that the Fund did not waive the City of Greensboro's immunity as explained in *Dobrowolska ex rel. Dobrowolska v. Wall*, 138 N.C. App. 1, 8-9, 530 S.E.2d 590, 596 (2000), because the Fund failed to meet the statutory requirements of a local government risk pool.

Furthermore, the *Pettiford* court concluded that the City of Greensboro's purchase of excess liability insurance did not waive its governmental immunity based on the explicit language of the policy. The City of Greensboro acknowledged that it purchased a $5 million excess liability policy to cover claims above $3 million. The *Pettiford* court examined the policy provisions of the excess liability insurance and found them to be substantially

necessary party." N.C. Gen. Stat. § 1A-1, Rule 12(b)(1), (2), (6), and (7) (2013).

similar to those found in *Magana v. Charlotte-Mecklenburg Board of Education*, 183 N.C. App. 146, 645 S.E.2d 91 (2007), where our Court held that a local governmental entity had not waived its immunity through the purchase of excess liability insurance. *Id.* at 527. Both the policy found in *Magana* and the City of Greensboro's policy in *Pettiford* "disclaim[ed] any right of indemnification until (1) the damages exceed a self-insured retention amount ($1 million in *Magana* and $3 million in [*Pettiford*]); (2) the insured has a legal obligation to pay those damages; and (3) the insured actually pays those damages to the claimant." *Id.* at 529. The *Pettiford* court concluded the following:

> This excess liability insurance does not apply unless and until the City has a legal obligation to pay the $ 3 million self-insured amount. Because the City is immune from negligence claims up to $ 3 million, it will never have a legal obligation to pay this self-insured amount and, thus, has not waived its immunity through the purchase of this excess liability insurance policy.

The City of Greensboro's motion to dismiss and supplemental motion to dismiss the negligence claims were granted. *Id.* at 529.

In the case before us, plaintiff argued in the 3 September 2010 complaint that defendant Greensboro had waived its governmental immunity by the purchase of liability insurance. In its motion to dismiss, defendant Greensboro acknowledges the

purchase of liability insurance, but maintains that the liability insurance does not constitute a waiver of its sovereign immunity. In support of its defense, defendant Greensboro filed the affidavit of Everette Arnold, Executive Director of the Guilford City/County Insurance Advisory Committee and the insurance contracts themselves[4]. The evidence indicates that in 2004, defendant Greensboro purchased a $5 million excess liability policy with a $3 million self-insured retention from the Genesis Insurance Company. Arnold's affidavit stated that "the retained limit ($3,000,000.00) 'must be paid by the Insured. . . .' Thus, under the terms of the policy, the City [of Greensboro] is responsible for paying $3,000,000.00 before there is any potential coverage under the Genesis Insurance policy." The language of the insurance policy states that "[t]his policy is not intended by the Insured to waive its governmental immunity[.]" We find these policy provisions to be substantially similar to those found in *Magana* and *Pettiford.*

---

[4]The defense of sovereign immunity is both a North Carolina Rules of Civil Procedure Rule 12(b)(1) and Rule 12(b)(2) defense. *Battle Ridge Cos. v. N.C. DOT*, 161 N.C. App. 156, 157, 587 S.E.2d 426, 427 (2003). "Consideration of the affidavits and insurance contracts is proper, without converting the motion to dismiss to one for summary judgment, under motions filed pursuant to Rules 12(b)(1) and (b)(2) and with respect to state law claims." *Pettiford*, 556 F. Supp. 2d at 525 n.11.

Based on the terms of defendant Greensboro's liability insurance policy, we hold that defendant Greensboro has not waived its immunity as to plaintiff's State claims of discrimination on the basis of race, conspiracy to discriminate on the basis of race, and conspiracy to injure plaintiff in his reputation and profession. Furthermore, plaintiff's claims against defendants Wray and Brady in their official capacities "is a suit against the State" and therefore, sovereign immunity applies. *White v. Trew*, 366 N.C. 360, 363, 736 S.E.2d 166, 168 (2013) (citation omitted); *See Clayton v. Branson*, 153 N.C. App. 488, 493, 570 S.E.2d 253, 257 (2002) (stating that "[a]n officer acting in his official capacity shares the municipalities immunity or waiver" (citation omitted)). Accordingly, we reverse the trial court's denial of defendants' motion to dismiss with respect to plaintiff's state claims against defendant Greensboro and defendants Wray and Brady in their official capacities.

Reversed.

Judges MCGEE and DILLON concur.