IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-878

Filed 1 October 2024

Alamance County, No. 23 CVS 20

K.H. A MINOR, BY AND THROUGH HER GUARDIAN AD LITEM, DEBORAH CLAGGETT, Plaintiff,

v.

DANIELLE L. DIXON, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY, AND ALAMANCE-BURLINGTON BOARD OF EDUCATION, Defendants.

Appeal by plaintiff from order entered 17 April 2023 by Judge Michael L. Robinson in Alamance County Superior Court. Heard in the Court of Appeals 17 April 2024.

*McMillion Law, PLLC, by Jeff McMillion, for plaintiff-appellant.*

*Tharrington Smith, LLP, by David B. Noland, for defendant-appellee Alamance-Burlington Board of Education.*

THOMPSON, Judge.

Deborah Claggett, on behalf of her minor granddaughter, K.H.,[1] and as K.H.'s guardian ad litem, brought action against Danielle Dixon, individually and in her official capacity, and the Alamance-Burlington Board of Education, alleging four tort claims and a claim that K.H. was denied her constitutional right to a sound basic education pursuant to article I, section 15, and article IX, section 2 of the North

---

[1] Initials are used to protect the identity of the minors referenced in this opinion.

Carolina Constitution. The Alamance-Burlington Board of Education (defendant) filed a motion to dismiss pursuant to Rules 12(b)(1), 12(b)(2) and 12(b)(6) and an answer to plaintiff's complaint. The Alamance County Superior Court entered an order granting defendant's motion to dismiss, and plaintiff timely appealed. After careful review, we affirm the trial court's order dismissing plaintiff's complaint against defendant.

## I. Factual Background and Procedural History

K.H. was a student at Broadview Middle School, located in Burlington, North Carolina.[2] On 2 November 2022, K.H. attempted to enter Danielle Dixon's[3] (Dixon) classroom to retrieve K.H.'s bookbag. However, K.H.'s attempt was prevented by Dixon, who used her arm to block K.H. from entering the classroom. K.H. persisted in her efforts to enter the classroom and ultimately struck Dixon's arm. In response, Dixon grabbed K.H., pulled her inside the classroom, and shut the door. Once inside the classroom, Dixon grabbed K.H. by her hair and slammed K.H. into the door before forcefully slamming K.H. to the ground. While still clenching the back of K.H.'s head by her hair, Dixon slammed K.H.'s head into the ground "no less than five times[.]" **[**

As Dixon's assault on K.H. was occurring, other students inside the classroom

---

[2] Broadview Middle School falls within the Alamance-Burlington Board of Education's district and is governed thereby.

[3] Danielle Dixon is not a party to this appeal. Further, at all times relevant to this appeal, Dixon was a teacher employed by defendant.

were yelling and requesting Dixon "to release" K.H. and to stop attacking her. The commotion from the attack prompted two other teachers to enter the classroom and call for help. Despite the other teachers entering the classroom, Dixon continued holding K.H. on the ground by the hair on the back of her head and demanding that K.H. get out of her classroom. Following the assault, K.H. was suspended for ten days and subsequently relocated to Ray Street Academy.

On 5 January 2023, K.H., by and through her guardian ad litem/grandmother, Deborah Claggett, filed a complaint against defendant alleging several causes of action including (1) assault and battery, (2) negligent hiring, retention, and supervision of Dixon, (3) negligent infliction of emotional distress, (4) intentional infliction of emotional distress, and (5) violations of the North Carolina Constitution article I, section 15 and article IX, section 2.

On 16 February 2023, in response to plaintiff's complaint, defendant contemporaneously filed an Answer and a Motion to Dismiss. Defendant sought to dismiss plaintiff's complaint "pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the North Carolina Rules of Civil Procedure[.]"

On 10 April 2023, defendant's motion to dismiss plaintiff's complaint was heard during the civil session of Alamance County Superior Court. After hearing from both parties, the court took the matter under advisement and subsequently entered an order granting defendant's motion to dismiss, and each of plaintiff's claims was dismissed with prejudice.

On 16 May 2023, plaintiff entered timely notice of appeal.

## II. Discussion

### A. Appellate Jurisdiction

As an initial matter, we must determine whether this Court has jurisdiction to hear plaintiff's interlocutory appeal. Plaintiff contends that the superior court's order granting defendant's motion to dismiss—based on the defense of governmental immunity—is immediately appealable. We agree.

"Generally, there is no right of immediate appeal from interlocutory orders and judgments." *Goldston v. American Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990). However, an interlocutory order or judgment which affects a substantial right is immediately appealable. *Id.* at 726, 392 S.E.2d at 736. Moreover, "[t]his Court has repeatedly held that appeals raising issues of governmental or sovereign immunity affect a substantial right sufficient to warrant immediate appellate review." *Kawai Am. Corp. v. Univ. of N.C. at Chapel Hill*, 152 N.C. App 163, 165, 567 S.E.2d 215, 217 (2002) (citation omitted). However, the scope of appellate review is limited.

While "interlocutory orders raising issues of governmental or sovereign immunity affect a substantial right sufficient to warrant immediate appellate review[,]" this immediate appellate review only applies to the "denial of a motion to dismiss under Rules 12(b)(2), 12(b)(6), and 12(c), or a motion for summary judgment under Rule 56." *Hinson v. City of Greensboro*, 232 N.C. App. 204, 209, 753 S.E.2d 822,

826 (2014) (citations omitted). Therefore, "[w]e cannot review a trial court's order denying a motion to dismiss under Rule 12(b)(1)[,]" *id.* (citation omitted), because a "Rule 12(b)(1) motion based on sovereign immunity is neither immediately appealable pursuant to N.C. Gen. Stat. § 1-277(b), nor affects a substantial right." *Horne v. Town of Blowing Rock*, 223 N.C. App. 26, 29, 732 S.E.2d 614, 616 (2012) (citation omitted).

Here, defendant filed a motion to dismiss plaintiff's complaint pursuant, collectively, to Rule 12(b)(1), 12(b)(2), and 12(b)(6). As it relates to plaintiff's tort claims, the trial court granted defendant's motion to dismiss because plaintiff's complaint "d[id] not sufficiently demonstrate a basis for waiver of [defendant]'s sovereign immunity as required under Rules 12(b)(1)–(2)." Regarding plaintiff's constitutional claim, the trial court granted defendant's motion to dismiss because plaintiff's "[c]omplaint f[ell] short of alleging facts giving rise to the type of claims contemplated in *Deminski v. State Bd. of Educ.,* and therefore [was] insufficient under Rule 12(b)(6)." Considering this in light of our holdings in *Horne* and *Hinson*, we may properly review plaintiff's appeal of the trial court's order granting defendant's 12(b)(2) and 12(b)(6) motions to dismiss.

## B.    Sovereign Immunity

On appeal, plaintiff contends that the "trial court erred by dismissing the plaintiff's claims under the theory of sovereign immunity because a school board trust is a de facto insurance policy." We do not agree.

The doctrine of sovereign immunity is a well-established "principle of jurisprudence, resting on grounds of sound public policy, that a state may not be sued in its own courts or elsewhere unless it has consented by statute to be sued or has otherwise waived its immunity from suit." *Can Am S., LLC v. State of N.C.*, 234 N.C. App. 119, 125, 759 S.E.2d 304, 309 (2014) (citation omitted). "By application of this principle, a subordinate division of the state or an agency exercising statutory governmental functions may be sued only when and as authorized by statute." *Id.* (citation omitted). This Court has indicated that "[s]overeign immunity is not merely a defense to a cause of action; it is a bar to actions that requires a plaintiff to establish a waiver of immunity." *Id.* Therefore, "the trial court must determine whether the complaint specifically alleges a waiver of governmental immunity." *Id.* (citation omitted). "[P]recise language alleging that the State has waived the defense of sovereign immunity is not necessary, but, rather, the complaint need only contain sufficient allegations to provide a reasonable forecast of waiver[,]" and if a plaintiff fails to allege such waiver, "the complaint fails to state a cause of action." *Id.* (citations omitted).

To determine whether the trial court properly granted defendant's Rule 12(b)(2) motion to dismiss based on sovereign immunity, "we must consider: (1) whether plaintiff sufficiently pleaded that defendant[ ] waived [its] sovereign immunity; and (2) whether defendant[ ] expressly or impliedly waived sovereign immunity." *Id.* at 126, 759 S.E.2d at 309.

"As a general rule, the doctrine of governmental, or sovereign immunity bars actions against, *inter alia*, the state, its counties, and its public officials sued in their official capacity." *Lail v. Cleveland Cty. Bd. of Educ.*, 183 N.C. App. 554, 558, 645 S.E.2d 180, 184 (2007) (citation omitted). "A county or city board of education is a governmental agency, and therefore may not be liable in a tort action except insofar as it has duly waived its immunity from tort liability pursuant to statutory authority." *Id.* N.C. Gen. Stat. § 115C-42 provides a method in which a local board of education may waive its immunity. More specifically,

> [a]ny local board of education, by securing liability insurance as hereinafter provided, is hereby authorized and empowered to waive its governmental immunity from liability for damage by reason of death or injury to person or property caused by the negligence or tort of any agent or employee of such board of education when acting within the scope of his authority or within the course of his employment. Such immunity shall be deemed to have been waived by the act of obtaining such insurance, but such immunity is waived only to the extent that said board of education is indemnified by insurance for such negligence or tort.

N.C. Gen. Stat. § 115C-42 (2023). Furthermore, "a school board can only waive its governmental immunity where it procures insurance through a company or corporation licensed and authorized to issue insurance in this State or a qualified insurer as determined by the Department of Insurance." *Lail*, 183 N.C. App. at 560–61, 645 S.E.2d at 185.

In this case, plaintiff failed to sufficiently plead that defendant waived its sovereign immunity. While "[t]he requirement that a plaintiff specifically allege waiver of governmental immunity does not mandate that a complaint use any particular language[,]" *Can Am S. LLC*, 234 N.C. App. at 126, 759 S.E.2d at 310 (ellipsis and citation omitted), plaintiff's complaint was required to, "consistent with the concept of notice pleading, . . . allege facts that, if taken as true, are sufficient to establish a waiver by the State of sovereign immunity." *Id.* However, plaintiff's only contention regarding a defense of sovereign immunity was that "[d]efendant Board failed to provide a safe learning environment free of harassment and intimidation as required by N.C. Const. art[icle] I, [section] 15 and N.C. Const. art[icle] IX[,] [section] 2, which precludes the [d]efendant Board and their agents from governmental immunity." Thus, plaintiff's contention falls short of establishing that defendant waived its sovereign immunity. Because plaintiff failed to sufficiently plead that defendant waived its sovereign immunity, we need not address the second prong of the Rule 12(b)(2) motion to dismiss analysis.

Consequently, we hold that the trial court did not err in dismissing plaintiff's tort claims—assault and battery; negligent hiring, retention, and supervision; negligent infliction of emotional distress; and intentional infliction of emotional distress—against defendant pursuant to Rule 12(b)(2) because defendant had not waived its sovereign immunity; therefore, the trial court did not have personal jurisdiction over defendant.

**C.    Constitutional Claim**

Next, plaintiff contends that the trial court erred in granting defendant's Rule 12(b)(6) motion to dismiss because "plaintiff had stated a proper claim for violation of the North Carolina Constitution against [defendant]." We do not agree.

This Court reviews a Rule 12(b)(6) motion to dismiss de novo. *Bobbitt v. Eizenga*, 215 N.C. App. 378, 379, 715 S.E.2d 613, 615 (2011) (italics omitted). "The standard of review of an order granting a 12(b)(6) motion is whether the complaint states a claim for which relief can be granted under some legal theory when the complaint is liberally construed and all the allegations included therein are taken as true." *Id.* at 379–80, 715 S.E.2d at 615 (citation omitted). Accepting that "the complaint's material factual allegations are taken as true[,]" a trial court may properly grant a motion to dismiss if one of the following conditions is satisfied: "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Id.* at 380, 715 S.E.2d at 615.

It is noteworthy that although sovereign immunity generally bars an action against the State unless the State has consented to suit or otherwise waived its immunity, "the doctrine of sovereign immunity will not stand as a barrier to North Carolina citizens who seek to remedy violations of their rights guaranteed under the North Carolina Constitution." *Coastal Conservation Ass'n v. State of N.C.*, 285 N.C.

App. 267, 279, 878 S.E.2d 288, 298 (2022). As such, "a direct constitutional claim will survive a Rule 12(b)(6) motion to dismiss, notwithstanding the doctrine of sovereign or governmental immunity." *Id.* To determine whether a plaintiff's complaint has sufficiently alleged a claim for which relief may be granted under our state constitution, we must apply a three-part test. *Id.*

"First, to allege a cause of action under the North Carolina Constitution, a state actor must have violated an individual's constitutional rights. Second, the claim must be colorable." *Id.* (citations omitted). To be a colorable claim, "the claim must present facts sufficient to support an alleged violation of a right protected by the State Constitution." *Id.* And third, "there must be no adequate state remedy. No adequate state remedy exists when state law does not provide for the type of remedy sought by the plaintiff." *Id.* (internal quotation marks, brackets, and citations omitted). Our Supreme Court has indicated that "when there is a clash between [ ] constitutional rights and sovereign immunity, the constitutional rights must prevail." *Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 339, 678 S.E.2d 351, 355 (2009) (emphasis omitted) (citation omitted). As such, a claim that is barred by sovereign immunity is not an adequate remedy, because "to be considered adequate in redressing a constitutional wrong, a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim." *Id.* at 339–40, 678 S.E.2d at 355.

Applying the first part of the test to the instant case, we conclude that plaintiff successfully alleged that a state actor violated K.H.'s constitutional rights. Here,

plaintiff alleged that defendant "failed to provide a safe learning environment free of harassment and intimidation as required by N.C. Const. art[icle] I, [section] 15 and N.C. Const. art[icle] IX[,] [section] 2, which precludes the [d]efendant Board and their agents from governmental immunity." Defendant, Alamance-Burlington Board of Education, "as a government entity, is a government actor." *Deminski v. State Bd. of Educ.*, 377 N.C. 406, 414, 858 S.E.2d 788, 794 (2021). Thus, we turn to the second part of the test.

Under the second part of the test, we must determine if plaintiff "alleged a colorable constitutional claim." *Id.* Article I, section 15 states, "[t]he people have a right to the privilege of education, and it is the duty of the State to guard and maintain that right." N.C. Const. art. I, § 15. And, article IX, section 2 states, "[t]he General Assembly shall provide by taxation and otherwise for a general and uniform school system of free public schools, which shall be maintained at least nine months in every year, and wherein equal opportunities shall be provided for all students." N.C. Const. art. IX, § 2. Our Supreme Court has stated that, article I, section 15 and article IX, section 2 of our state constitution "work in tandem . . . to guarantee every child of this state an opportunity to receive a sound basic education in our public schools." *Deminski*, 377 N.C. at 412, 858 S.E.2d at 793. Pursuant to *Leandro*,

> a 'sound basic education' is one that will provide the
> student with at least: (1) sufficient ability to read, write,
> and speak the English language and a sufficient knowledge
> of fundamental mathematics and physical science to enable
> the student to function in a complex and rapidly changing

society; (2) sufficient fundamental knowledge of geography, history, and basic economic and political systems to enable the student to make informed choices with regard to issues that affect the student personally or affect the student's community, state, and nation; (3) sufficient academic and vocational skills to enable the student to successfully engage in post-secondary education or vocational training; and (4) sufficient academic and vocational skills to enable the student to compete on an equal basis with others in further formal education or gainful employment in contemporary society.

*Leandro v. State of North Carolina*, 346 N.C. 336, 347, 488 S.E.2d 249, 255 (1997).

Finally, "[t]aken together, [a]rticle I, [s]ection 15 and [a]rticle IX, [s]ection 2 require the government to provide an opportunity to learn that is free from *continual* intimidation and harassment which prevent a student from learning. In other words, the government must provide a safe environment where learning can take place." *Deminski*, 377 N.C. at 412–13, 858 S.E.2d at 793 (emphasis added).

Looking to our case precedent for guidance, we find that the instant case is readily distinguishable from *Deminski*. In *Deminski*, the plaintiff, mother of minors E.M.D., K.A.D., and C.E.D. (plaintiff-students), alleged that during a *several*-month period, her daughter, C.E.D., was *repeatedly* subjected to bullying and sexual harassment by other students. *Id.* at 407, 858 S.E.2d at 790. As a result of enduring this conduct for months without relief from school personnel, the plaintiff filed a complaint pursuant to article I, section 15, and article IX, section 2 of the North Carolina Constitution. *Id.* at 409, 858 S.E.2d at 791. In her complaint, the plaintiff's allegations—regarding the bullying and sexual harassment that C.E.D. was

subjected to—included the phrases, "on multiple occasions," "repeatedly[,]" and "[o]n at least one occasion[,]" *id.* at 407–09, 858 S.E.2d at 790–91, which indicates that the bullying and harassment occurred more than once. Additionally, the plaintiff alleged that one of the students that had been bullying and sexually harassing C.E.D. was also enrolled in classes with E.M.D. and K.A.D., and that their experiences in class with this student included "sexual conduct, *constant* verbal interruptions laced with vulgarity, and physical violence including knocking students' items onto the floor, throwing objects, and pulling books and other items off shelves and onto the ground." *Id.* at 409, 858 S.E.2d at 791 (emphasis added). The *Deminski* plaintiff's complaint indicated that she had "*repeatedly* notified the teacher, assistant principal, [the] principal" and "the Pitt County Board of Education" (collectively referred to hereinafter as "school personnel") of the incidents and was told that "there was a 'process' " and that it would "take time." *Id.* (emphasis added). The defendant moved to dismiss plaintiff's complaint, the trial court denied the motion, and defendant appealed the trial court's denial. *Id.* at 410, 858 S.E.2d 792. Ultimately, defendant's motion to dismiss made its way to our Supreme Court. *Id.* at 411, 858 S.E.2d at 792. Based on the allegations found in the plaintiff's complaint, our Supreme Court found that the plaintiff had alleged a colorable constitutional claim to survive the defendant's motion to dismiss, because "the school's deliberate indifference to *ongoing* student harassment created an environment in which plaintiff-students could not learn[,]" and that "the right to a sound basic education rings hollow if the structural

right exists but in a setting that is so intimidating and threatening to students that they lack a meaningful opportunity to learn." *Id.* at 414, 858 S.E.2d at 794 (emphasis added).

Here, plaintiff alleged that defendant violated her constitutional rights to education by failing "to provide an environment free of physical abuse, verbal abuse, harassment, and hostility[,]" and "failed to provide a safe learning environment for learning to take place." To support these allegations, plaintiff stated that

> [d]efendant Board and their agents [ ] failed in their constitutional requirements by:
>
> a.     [s]howing a deliberate indifference to the hostile environment by failing to provide an adequately staffed learning environment;
>
> b.     [s]howing a deliberate indifference to this environment by hiring [d]efendant Dixon to a teaching position without an active and valid teaching license under North Carolina law;
>
> c.     [s]howing a deliberate indifference to this environment by allowing [d]efendant Dixon to continue teaching after multiple issues within her classroom;
>
> d.     [f]ailing to terminate a teacher after the teacher did not obtain proper licensure required under North Carolina law; and
>
> e.     [a]llowing a teacher to be in [a] position of authority over students without proper licensure required under North Carolina law.

Plaintiff further alleged that K.H. "suffered educational consequences" and that K.H.'s "academic performance . . . was placed in peril when she was physically abused

by a teacher of the [d]efendant[,]" and "forced to move schools without her input."

While it is plaintiff's contention that defendant's negligent acts and omissions deprived her of her constitutional right to a sound basic education, we fail to see how these allegations give rise to the type of claims contemplated in *Deminski*. Unlike the allegations found in the *Deminski* complaint, here, plaintiff's complaint is entirely devoid of any allegation that would suggest that plaintiff was subjected to *repeated* or *ongoing* issues with Dixon. Despite plaintiff's allegation that "Dixon had multiple issues within her classroom with other students and disciplinary actions by the [p]rincipal[,]" plaintiff's complaint is entirely predicated on the *singular* attack by Dixon that occurred on 2 November 2022. Furthermore, it is unclear from the complaint what the "multiple issues within [Dixon's] classroom" were; instead, this is a vague statement that does not illustrate what impact these "multiple issues . . . with other students" had on K.H.'s ability to receive an education. Whereas in *Deminski*, it is abundantly clear from the allegations that the constant bullying, sexual harassment, and disruptive behaviors that C.E.D. and her sisters were subjected to usurped their "opportunity to learn [in an environment] that [wa]s free from *continual* intimidation and harassment[.]" *Id.* at 412–13, 858 S.E.2d at 793 (emphasis added). The allegations in *Deminski* make it clear that the incidents giving rise to the cause of action were happening to C.E.D. and her sisters, as opposed to the current case where the allegation states there were "multiple issues with *other students*[,]" not K.H.

Another distinguishing feature between the instant case and *Deminski* is that in this case, plaintiff's complaint lacks any allegation that plaintiff reported to, or in any way notified, defendant or any school personnel about the "multiple issues within [Dixon's] classroom[.]" The only instance in which it is alleged that *anyone* was made aware of Dixon's conduct is found in plaintiff's statement of facts where plaintiff alleged that two teachers entered the classroom after hearing the "yelling and commotion" caused by Dixon's attack on plaintiff on 2 November 2022. In contrast, the plaintiff in *Deminski* alleged that she had "repeatedly notified the teacher, assistant principal, [the] principal . . . and [d]efendant, Pitt County Board of Education" of the incidents that were occurring and was told that "there was a process that would take time[.]" *Id.* at 409, 858 S.E.2d at 791 (internal quotation marks omitted).

Finally, plaintiff's complaint is without any allegation that being transferred to Ray Street Academy in any way failed to provide K.H. the constitutional right to the sound basic education described in *Leandro*. *See Leandro*, 346 N.C. at 347, 488 S.E.2d at 255 (defining what a 'sound basic education' is). Nowhere in the complaint did plaintiff allege that she had appealed defendant's decision to relocate K.H. to Ray Street Academy, nor did plaintiff allege that K.H. was precluded from re-entering Broadview Middle School at a later date.

In sum, we conclude that plaintiff has failed to allege a colorable constitutional claim because "[plaintiff's] complaint on its face reveals the absence of facts sufficient

to make a good claim[.]" *Bobbitt*, 215 N.C. App. at 380, 715 S.E.2d at 615. As such, we conclude that the trial court did not err in granting defendant's Rule 12(b)(6) motion to dismiss plaintiff's constitutional claim.

### III.    Conclusion

Based on the foregoing discussion, we hold that the trial court properly granted defendant's motion to dismiss pursuant to Rule 12(b)(2) and 12(b)(6). The trial court was without personal jurisdiction over defendant because defendant had not waived its sovereign immunity, thus dismissing plaintiff's tort claims pursuant to Rule 12(b)(2) was proper. Plaintiff failed to allege a colorable constitutional claim, and the trial court properly dismissed plaintiff's constitutional claim pursuant to Rule 12(b)(6). For these reasons, we affirm the trial court's order granting defendant's motion to dismiss.

AFFIRMED.

Judge MURPHY concurs in part and dissents in part.

Judge ARROWOOD concurs.

MURPHY, Judge, concurring in part and dissenting in part.

I concur in the Majority's holding that the trial court did not err in dismissing Plaintiff's tort claims pursuant to Rule 12(b)(2), as Defendant did not waive its sovereign immunity. However, I respectfully dissent from the Majority's holding that the trial court did not err in dismissing Plaintiff's direct constitutional claim pursuant to Rule 12(b)(6), as Plaintiff's allegations, when taken as true under our proper standard of review, are clearly sufficient to support an alleged violation of Defendant's right to "an opportunity to receive a sound basic education in our public schools[]" protected by Article I, § 15, and Article IX, § 2, of our State Constitution. *See Deminski*, 377 N.C. at 412 (recognizing that Article I, § 15, and Article IX, § 2, "work in tandem . . . to guarantee every child of this state an opportunity to receive a sound basic education in our public schools").

"[W]here there is a right, there is a remedy." *Kinsley v. Ace Speedway Racing, Ltd.*, __ N.C. __, __ (2024), slip op. at 7. In *Corum v. Univ. of N.C.*, 330 N.C. 761 (1992), our Supreme Court "created" "a common law cause of action when existing relief does not sufficiently redress a violation of a particular constitutional right[,]" now known as "*Corum* claims[,]" "[t]o ensure that every right does indeed have a remedy in our court system[.]" *Id.* at __, slip op. at 7; *see also Askew v. City of Kinston*, __ N.C. __, 902 S.E.2d 722, 728, 733 (2024).

Sovereign immunity is no defense to a valid *Corum* claim. *Id.* at __, slip op. at 7. And while Plaintiff's tort claims are barred by the doctrine of sovereign immunity,

under *Corum*, "[P]laintiff may move forward in the alternative, bringing [her] colorable claims directly under our State Constitution *based on the same facts that formed the basis for* [*her*] *common law . . . claim*[*s*]." *Craig*, 363 N.C. at 340 (emphasis added).

Our Supreme Court "made clear in *Deminski*, at the motion to dismiss stage, whether a claim is 'colorable' focuses entirely on the allegations in the complaint." *Kinsley*, __ N.C. at __, slip op. at 9 (citing *Deminski*, 377 N.C. at 412). "Those allegations are treated as true and the Court examines whether the allegations, if proven, constitute a violation of a right protected by the North Carolina Constitution." *Id.* at __, slip op. at 9 (marks omitted); *see Deminski*, 377 N.C. at 413 (marks omitted) (recognizing "colorable claim" as "a plausible claim that may reasonably be asserted, given the facts presented and the current law (or a reasonable and logical extension or modification of the current law)"). We do "not predetermine the likelihood that plaintiff will win other pretrial motions, defeat affirmative defenses, or ultimately succeed on the merits of [her] case." *Craig*, 363 N.C. at 341; *cf. Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 654 (1999) ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.").

"To . . . accord every injury its proper redress, *Corum* requires courts to disaggregate the rights violated, the constitutional harms alleged, and the appropriate remedy *on the facts of the particular case*." *Askew*, __ N.C. at __

2

(emphasis added) (internal marks omitted). Instead of viewing Plaintiff's allegations wholistically to determine whether they would "present facts sufficient to support an alleged violation of a right [to an opportunity to receive a sound basic education] protected by the State Constitution[,]" *Kinsley*, __ N.C. at __, slip op. at 8, the Majority treats *Deminski* as establishing a factual floor for colorable *Corum* claims in this context. Instead, *Deminski* is one application of the *Corum* test to one specific set of factual allegations supporting an alleged violation of the right to an opportunity to receive sound basic education and not an end point on the spectrum.

The Majority's apparent "fail[ure] to see how [Plaintiff's] allegations" that Defendant's "negligent acts and omissions deprived her of her constitutional right to a sound basic education[] . . . give rise to the type of claims contemplated in *Deminski*[]" rests solely on its determination that—unlike in *Deminski*—Plaintiff did not allege that she "was subjected to *repeated* or *ongoing* issues with Dixon[]" but to a mere "*singular* attack" by her teacher. *Majority* at 15 (emphasis in original). This holding ignores Plaintiff's allegations that Defendant "show[ed] a deliberate indifference" to the hostile learning environment created by Dixon's lack of "an active and valid teaching license under North Carolina law[]"; Defendant's failure to terminate Dixon after she "did not obtain proper licensure required under North Carolina law;" and Defendant's placement of Dixon "in a position of authority over students without proper licensure" in their entirety. These factual circumstances not present in *Deminski* are alleged here and therefore require our consideration.

In her complaint, Plaintiff alleged that Defendant hired and retained Dixon, who did not have a teaching license at any time during the events giving rise to this action, to teach and supervise students in the inadequately staffed school that Plaintiff, a student under Defendant's care and control, attended:

> 9. [Dixon] is currently employed as a teacher for Defendant Board and was hired on [12 September] 2022[] and maintained her teaching position at Broadview Middle School . . . .
>
> 10. . . . Dixon was issued a North Carolina Teachers License . . . on [5 November] 2012[,] and that license expired on [30 June] 2015.
>
> 11. During all times relevant to this action, [Dixon] was working as a teacher for Defendant Board with a license that expired seven years before being hired and was not updated before [Dixon] began teaching full time for Defendant Board.
>
> 12. Defendant Board[] . . . failed to properly search and determine if [Dixon] was a properly licensed teacher in good standing.
>
> 13. Defendant Board[] . . . failed to follow up on [Dixon's] teaching licensure status and allowed [Dixon] to teach without a proper state licensure.
>
> 14. . . . [D]uring the time frame of [Dixon] being hired by Defendant [B]oard until [2 November] 2022, [Dixon] had multiple issues within her classroom with other students and disciplinary actions by the Principal of Broadview Middle School, all while not being licensed to be a teacher in North Carolina.
>
> 15. . . . [A]t the time of this writing, there are over 15 open teaching positions at Broadview Middle School.

Plaintiff further alleged that Dixon, who Defendant had hired to teach at Broadview Middle School without a valid teaching license, assaulted Plaintiff, a student whom Defendant had placed in Dixon's care:

17. Minor Plaintiff, who had an assigned teacher of [Dixon], attempted to walk into her assigned classroom to retrieve her bookbag, when [Dixon] blocked her path with her arm while Minor Plaintiff was approximately three inches away and still moving forward.

18. Minor Plaintiff was unable to avoid any contact with [Dixon] because of the close proximity when [Dixon] moved her arm in the path of Minor Plaintiff. This caused Minor Plaintiff to strike [Dixon] in her arm.

19. [Dixon] then grabbed Minor Plaintiff and pulled her inside of the classroom while closing the door.

20. Once inside the classroom, [Dixon] grabbed Minor Plaintiff by the hair and slammed Minor Plaintiff into the door with enough force to break a broom that was located between Minor Plaintiff and the wall and door area.

21. [Dixon] then grabbed the Minor Plaintiff by the hair on the back of her head and forcefully slammed Minor Plaintiff to the ground.

22. [Dixon] then, while still holding onto the Minor Plaintiff's hair and back of her head, slammed Minor Plaintiff's head into the ground . . . .

. . . .

26. Minor [Plaintiff's] head was slammed into the ground no less than five . . . times by [Dixon] . . . .

27. During the assault and battery[,] . . . the students inside of the classroom began yelling for [Dixon] to release the Minor Plaintiff and stop her . . . attack . . . .

28. Upon the yelling and commotion caused by [Dixon's] continued attack on the Minor Plaintiff, two other teachers entered the room and called for help.

29. [Dixon], even after the two other teachers entered the classroom, continued to hold Minor [Plaintiff] to the ground by the hair on the back of her head and yelled for the Minor [Plaintiff] to get out of her classroom.

30. . . . [Dixon] was entrusted to maintain the safety of the children she was teaching and order [in] said classroom . . . .

As a result of this attack, Plaintiff alleged that she suffered physical, academic, and emotional consequences:

33. The attack on Minor Plaintiff resulted in her hair being pulled out, bruises, and ongoing emotional distress which was directly caused by [Dixon's] attack.

34. . . . Minor Plaintiff was initially suspended for 10 days by the Defendant Board Superintendent, Dr. Dain Butler, until video of the altercation was made available to local news outlets, when the decision was reversed[,] and Minor Plaintiff was placed in Ray Street Academy.

35. Minor Plaintiff was not allowed to continue her academic education at Broadview Middle School and was forced to change her schools and livelihood . . . .

Plaintiff further alleged, *inter alia*, that Defendant, whose responsibility it was to train, supervise, hire, and discipline Dixon, "failed to properly train [Dixon] regarding appropriate interaction with minor children;" "failed to properly investigate whether [Dixon] had a valid and active teaching license;" "failed to properly investigate whether [Dixon] had the emotional capacity to be an effective teacher of minor children;" "failed to properly investigate whether [Dixon] had any

prior training in how to appropriately interact with minor children;" "failed to properly supervise [Dixon] during Board[-]sanctioned academic classes" in which Dixon "was tasked with teaching . . . [students] whose parents had entrusted their minor children to the Defendant Board and its employees, including during the aforementioned actions of [Dixon];" and "failed to intervene when there was . . . evidence of past issues with [Dixon's] teaching and actions towards other minor students of her class at Broadview[.]" Furthermore, "Defendant Board was aware, or should have been aware, [because] of past previous behaviors that [Dixon] was predisposed to commit and/or [was] committing the type of acts alleged herein . . . ."

Plaintiff incorporated each of these allegations underlying her various tort claims into her *Corum* claim "as if fully set forth[]" and alleged, *inter alia*, the following:

> 63. Article I, Section 15[,] and Article IX, Section 2[,] of the North Carolina Constitution require Defendant Board and their Agents to provide a sound basic education and to guard and maintain [citizens'] right [to that education].

> 64. Defendant Board and their agents are required by the North Carolina Constitution to provide a safe environment for students to learn free of verbal abuse, physical abuse, hostility, and harassment.

> 65. Defendant Board and [Dixon], as previously stated throughout this complaint, have failed to provide an environment free of physical abuse, verbal abuse, harassment, and hostility.

> 66. Defendant Board and [Dixon] have failed to provide a safe learning environment for learning to take place.

67. Defendant Board and their agents have failed in their constitutional requirements by:

> a. Showing a deliberate indifference to the hostile environment by failing to provide an adequately staffed learning environment;
>
> b. Showing a deliberate indifference to this environment by hiring [Dixon] to a teaching position without an active and valid teaching license under North Carolina law[];
>
> c. Showing a deliberate indifference to this environment by allowing [Dixon] to continue teaching after multiple issues within her classroom;
>
> d. Failing to terminate [Dixon] after the teacher did not obtain proper licensure required under North Carolina law; and
>
> e. Allowing a teacher to be in [a] position of authority over students without proper licensure required under North Carolina law.

> . . . .

> 70. The academic performance of Minor Plaintiff was placed in peril when she was physically abused by a teacher of the Defendant Board, initially suspended for the conduct of [Dixon], [and] then [had] the suspension rescinded but then [was] forced to move schools without her input. Minor Plaintiff suffered educational consequences from the Defendant's actions.

Taken as true, Defendant was deliberately indifferent to the hostile environment it created when it placed an individual with no valid teaching license in a position of authority to instruct academic classes and to supervise children in its public school; failed to adequately staff that school; failed to investigate, train, assess,

8

or ensure that Dixon had the requisite academic, emotional, and social qualifications to teach, supervise, and care for students in that school; and failed to take action when Dixon's concerning behaviors first arose. As a result, this unlicensed individual, whose ability or inability to properly, safely, and adequately teach and supervise students that Defendant remained deliberately indifferent to, attacked Plaintiff, a student under her supervision, before, during, and after two teachers finally responded after being alerted of the attack by students' yelling. Thereafter, Plaintiff was suspended from the school that she attended and forced to interrupt her academic year to move to another school.

A sound basic education is not *just* one "that is free from *continual* intimidation and harassment which prevent a student from learning," *Majority* at 12 (quoting *Deminski*, 377 N.C. at 412-13), but—as the Majority recognizes—

> one that will provide the student with at least: (1) sufficient ability to read, write, and speak the English language and a sufficient knowledge of fundamental mathematics and physical science to enable the student to function in a complex and rapidly changing society; (2) sufficient fundamental knowledge of geography, history, and basic economic and political systems to enable the student to make informed choices with regard to issues that affect the student personally or affect the student's community, state, and nation; (3) sufficient academic and vocational skills to enable the student to successfully engage in post-secondary education or vocational training; and (4) sufficient academic and vocational skills to enable the student to compete on an equal basis with others in further formal education or gainful employment in contemporary society.

*Leandro*, 346 N.C. at 347.

The aggregate of Plaintiff's allegations, including the facts underlying her common law claims which were incorporated by reference within her *Corum* claim, are sufficient to support an alleged violation of Defendant's right to an opportunity to receive a sound basic education in our public schools protected by Article I, § 15, and Article IX, § 2, of our State Constitution, because, if true, Defendant's deliberate indifference to the hostile environment created by placing an unlicensed person in a position of authority over Plaintiff deprived Plaintiff of that right.

I agree with the Majority that Plaintiff's allegations are sufficient under the first prong of the *Corum* test. Furthermore, as the Majority holds, Plaintiff's common law actions are barred by sovereign immunity; thus, no adequate state remedy exists for Plaintiff's injuries under the third prong of the *Corum* test. For the foregoing reasons, however, I would hold that Plaintiff's allegations are also sufficient under the second prong of the *Corum* test and reverse the order dismissing Plaintiff's *Corum* claim under Rule 12(b)(6). I respectfully dissent in part.